Filed 12/20/13  P. v. Luquin CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D062832 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCS232939) |
| JAVIER ANGEL LUQUIN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Stephanie Sontag, Judge.  Affirmed.

Tracy A. Rogers, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Senior Assistant Attorney General, Charles C. Ragland, Kathryn Kirschbaum and Kimberly Donohue, Deputy Attorneys General, for Plaintiff and Respondent.

I.

INTRODUCTION

The People charged Javier Angel Luquin with three counts of committing a lewd act upon a child (Pen. Code, § 288)[1] (counts 1-3),[2] one count of making a criminal threat (§ 422) (count 4), and one count of attempting to dissuade a witness from reporting a crime (§ 136.1, subd. (b)(1)) (count 5).[3]  A jury found Luquin guilty of counts 1, 4 and 5. The jury found Luquin not guilty of count 2, and was unable to reach a verdict on count 3.  The trial court sentenced Luquin to an aggregate term of six years in prison, comprised of the middle term of six years on count 1, the middle term of two years on count 4 to run concurrently with the term imposed on count 1, and the middle term of two years on count 5, stayed pursuant to section 654.

On appeal, Luquin claims that there is insufficient evidence to support the jury's verdict finding him guilty of making a criminal threat (§ 422) (count 4).  Specifically, Luquin claims that there is insufficient evidence that the victim suffered "sustained fear," as is required to support a finding of guilt for a violation of section 422.  We affirm the judgment.

---

[1]  Unless otherwise specified, all subsequent statutory references are to the Penal Code.

[2]  The People alleged that A.Q. was the victim of the offense charged in count 1 and that M.L. was the victim in the offenses charged in counts 2 and 3.

[3]  Counts 1, 4, and 5 are all alleged to have taken place in early June 2009.

## II.

## FACTUAL BACKGROUND[4]

On June 2, 2009, Luquin molested his cousin's eight-year-old daughter, A.Q., during a family gathering at Luquin's mother's house. At the time of the incident, A.Q. and her mother, Y.B., were living with Luquin's mother. The incident occurred after A.Q. and Luquin went to an upstairs bedroom to retrieve some playing cards. While standing in the doorway of the room, Luquin touched A.Q. over her clothing in her vaginal area. Luquin told A.Q. that if she would stay quiet, he would give her money. A.Q. ran from the room and immediately disclosed the molestation to Y.B.

Within approximately 15 minutes of A.Q.'s disclosure, Y.B. called the police. Later that evening, Luquin called Y.B.'s cell phone and left a profanity-laden voicemail message. Y.B. listened to the message the following morning. When asked by the prosecutor what Luquin said on the voicemail message, Y.B. testified that Luquin was "calling me names, calling me a bitch," and that he said that "when he sees me and my daughter he was going to bury us alive where we stood." Y.B. described Luquin's tone of voice in the voicemail as "ranting and raging." The following colloquy then occurred:

> "[The prosecutor]: And how did listening to that message make you feel?
>
> "[Y.B.]: He is supposed to be my cousin. He is supposed to be my family, not—
>
> "[The prosecutor]: Did you take his threats seriously?

---

4       We need not discuss the evidence pertaining to counts 2 and 3, since that evidence is not relevant to the issue on appeal.

"[Y.B.]: I did.

"[The prosecutor]: Why?

"[Y.B.]: Cause I did.  I know how [Luquin] can get when he gets mad.[5]

"[The prosecutor]: Were you scared by his threat?

"[Y.B.]: I was."

After this exchange, the prosecutor played a recording of the voicemail message for the jury.[6]  The transcription of the voicemail message that was provided to the jury reads as follows:

> "[F]irst saved message from phone number . . . , received June 2 at 10:16 p.m.  Hey bitch (unin[telligible])  Hey mother fucker.  You better pack your shit mother fucker.  Get your fucking ass out of the house.  You are out on the street.  (unin[telligible]).  I don't give a fuck (unin[telligible]) bitch, you ain't fucking with me [and] you ain't fucking with my house, bitch.  You're not fucking with my family.  And your shit is out on the street.  Do you hear me?!  You don't fuckin' fuck with me bitch.  That's right bitch fuck that shit, fuck you and your and your [*sic*] fucking daughter go fuck (unin[telligible]) so he can give you a fuckin roll of on the street bitch you know you're gonna fuck'n (unin[telligible]) you fuck'n call the cops and call everybody you fucking know because

---

5     Elsewhere during her testimony, Y.B. stated that she had known Luquin all of her life.

6     We directed the trial court to send the exhibit containing the recording to this court.  (See Cal. Rules of Court, rule 8.224(d) ["At any time the reviewing court may direct the superior court . . . to send it an exhibit"].)

4

(unin[telligible]) don't fuck with me, do not fuck with me you fucking cunt, (unin[telligible]) fuck'n whore."[7]

After the prosecutor played the recording of the voicemail message for the jury, the following colloquy occurred:

"[The prosecutor]: Now, prior to playing that recording, you testified that on that voicemail message [Luquin] said something to the effect of bury you alive. Did you hear that in there? I know it's hard to hear, because it's a recording.

"[Y.B.]: I think I heard I will bury you where you stand."

On the morning after the incident, Luquin telephoned Y.B. again and attempted to apologize. Y.B. hung up on Luquin and then went to the police station. Y.B. has not had any interaction with Luquin since this telephone call.[8]

---

[7] The trial court instructed the jury, "The transcript is not the evidence. The audio tape is the evidence. So you have to rely on what you hear as the evidence in this matter. It is difficult to hear."

[8] After the close of evidence, defense counsel made an oral motion for judgment of acquittal with respect to count 4 (making a criminal threat) and count 5 (dissuading a witness). Defense counsel argued in part, "There is a lot of cussing going on, but there is no direct threat of great bodily injury . . . or to kill somebody." The prosecutor responded that the sound quality of the recorded voicemail message was poor, and that the jury should have the opportunity to listen to the recording and consider Y.B.'s testimony regarding the content of the message.

The trial court denied the motion, noting that the People had played the voicemail message for the jury at trial, and that "there is some suggestion of a threat and certainly the victim heard the threat." The court stated, "I think it is a factual question for the jury to decide and not for me to decide as a matter of law."

III.

DISCUSSION

*There is sufficient evidence to support the jury's verdict*
*finding Luquin guilty of making a criminal threat*

Luquin claims that there is insufficient evidence to support the jury's verdict finding him guilty of making a criminal threat (§ 422) (count 4).[9] Specifically, Luquin contends that there is insufficient evidence that Y.B. suffered "sustained fear," which is required to support a finding of guilt with respect to this crime.

A.    *Standard of review*

In determining the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (*Jackson v. Virginia* (1979) 443 U.S. 307, 319.)  "[T]he court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt."  (*People v. Johnson* (1980) 26 Cal.3d 557, 578.)

B.    *Governing law*

*In People v. Toledo* (2001) 26 Cal.4th 221, 227-228, the Supreme Court summarized the elements of making a criminal threat (§ 422) as follows:

---

9     Luquin does not raise any challenge to the jury's finding of guilt on count 5 for dissuading a witness (§ 136.1, subd. (b)(1)).  Count 5 was also based on the voicemail message described in part II., *ante*.

6

"In order to prove a violation of section 422, the prosecution must establish all of the following: (1) that the defendant 'willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person,' (2) that the defendant made the threat 'with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out,' (3) that the threat—which may be 'made verbally, in writing, or by means of an electronic communication device'—was 'on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat,'[10] (4) *that the threat actually caused the person threatened 'to be in sustained fear for his or her own safety or for his or her immediate family's safety,'* and (5) that the threatened person's fear was 'reasonabl[e]' under the circumstances. [Citation]." (Italics added.)[11]

---

[10] On appeal, Luquin does not claim that there is insufficient evidence as to this element.

[11] Section 422 provides in relevant part:

"Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement, made verbally, in writing, or by means of an electronic communication device, is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety, shall be punished by imprisonment in the county jail not to exceed one year, or by imprisonment in the state prison.

"For the purposes of this section, 'immediate family' means any spouse, whether by marriage or not, parent, child, any person related by consanguinity or affinity within the second degree, or any other person who regularly resides in the household, or who, within the prior six months, regularly resided in the household.

The word "sustained" for purposes of section 422 "means a period of time that extends beyond what is momentary, fleeting, or transitory."  (*People v. Allen* (1995) 33 Cal.App.4th 1149, 1156 (*Allen*).)

"[A]ll of the circumstances can and should be considered in determining whether a terrorist threat [pursuant to section 422] has been made."  (*People v. Solis* (2001) 90 Cal.App.4th 1002, 1014 (*Solis*) [stating that "it is clear a jury can properly consider a later action taken by a defendant in evaluating whether the crime of making a terrorist threat has been committed"].)  For example, a "victim's knowledge of defendant's prior conduct is relevant in establishing that the victim was in a state of sustained fear."  (*Allen, supra*, 33 Cal.App.4th at p. 1156.)  In addition, evidence of a defendant's emotional state is relevant to the determination of whether the victim suffered sustained fear.  (See *People v. Culbert* (2013) 218 Cal.App.4th 184, 191, fn. 3 (*Culbert*) [concluding that there was substantial evidence that victim suffered sustained fear from incident in which "angry stepparent" put firearm to victim's head]; cf. *People v. Martinez* (1997) 53 Cal.App.4th 1212, 1221 ["Defendant was extremely angry, was cursing at Iorio and was in very close proximity to Iorio when he made the threats. This type of situation can be very intimidating and can carry an aura of serious danger"].)  Likewise, the seriousness of the threat is relevant in determining whether there is substantial evidence that the victim suffered sustained fear.  (See *People v. Fierro* (2010) 180 Cal.App.4th 1342, 1348

---

" 'Electronic communication device' includes, but is not limited to, telephones . . . ."

(*Fierro*) ["Facing what he thought was a gun and hearing words to the effect that he and his son were about to be killed, [the victim] was in sustained fear for his and his son's life"].)

C.    *Application*

In order to determine whether there is substantial evidence that Y.B. suffered sustained fear from a threat made by Luquin, we must first examine the evidence in the record that pertains to the nature of that threat. (*Solis, supra,* 90 Cal.App.4th at p. 1014 [a reviewing court must consider all surrounding circumstances in determining the existence of a criminal threat].)  As noted above, Y.B. testified that Luquin left a voicemail message in which he stated that, "when he sees me and my daughter he was going to bury us alive where we stood."  Luquin contends in his reply brief that "those words do not appear in the recorded message that contains the threat," and that Y.B.'s testimony "to that effect is a mistake, an exaggeration, or a fabrication."[12]

We have reviewed Y.B.'s testimony and have listened to the recorded message that the prosecutor played for the jury at trial.  In light of the poor quality of the recording, it is not possible to determine precisely what Luquin is saying.  However, it is clear that that the voicemail message contains numerous profanities, and that Luquin refers to both

---

[12]    Luquin's counsel did not raise a direct challenge to the sufficiency of the evidence as to the content of his threat in the opening brief and failed to designate the exhibit containing the recorded message for transmittal to this court, as is required.  (See Cal. Rules of Court, rule 8.224(a).)  Despite counsel's failure to properly preserve this claim, we exercise our discretion to consider the claim on the merits.  (See *People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6 [appellate court has discretion to consider claims that are not properly preserved for review].)

9

the molestation of Y.B.'s daughter and to Y.B. contacting the police. After listening to the recording, we conclude that a reasonable jury could have found that Luquin stated during a portion of the message, "I'll go fucking psycho fucking [*sic*] get out of jail, bitch." In addition, Luquin appears to state several times that he will be coming to his mother house where the molestation incident occurred and where Y.B. and A.Q. lived, stating, "I will be down there tomorrow," "[t]omorrow, I be there," and "I will be *there* motherfucking bitch." Further, it is clear that the transcription provided to the jury is far from a full transcription of the words contained on the voicemail message. Accordingly, we conclude that the jury could have reasonably credited Y.B.'s testimony that Luquin stated that when he saw Y.B. and her daughter, he would " bury [them] alive where [they] stood."

There is thus substantial evidence in the record that Luquin threatened to kill Y.B. and her daughter the next time he encountered them. The jury could also have reasonably found that Luquin issued this threat while in an extremely emotional and angry state (see *Culbert*, *supra*, 218 Cal.App.4th at p. 191, fn. 3 [noting that the defendant was "angry" when issuing implied criminal threat]), after having committed a serious criminal offense against Y.B.'s daughter. Moreover, the jury could have reasonably found that Luquin made the threat while implying that Y.B. would suffer repercussions if she were to contact the police. In addition, Luquin and Y.B. are related, and Y.B. knew Luquin well. Thus, the jury could have reasonably found that Y.B. would reasonably believe that Luquin would know how to find her in order to carry out his threat. In addition, as noted above, the jury could have reasonably found that Luquin repeatedly stated on the message

10

that he was going to come the following day to the residence where Y.B. and her daughter were staying. Further, Y.B. testified both that she took Luquin's threats seriously because of her knowledge of his temper (see *Allen, supra*, 33 Cal.App.4th at p. 1156), and that she was scared by the threat.

While the prosecution presented essentially no direct evidence that Y.B. suffered *sustained* fear as a result of Luquin's threat (compare with e.g, *Fierro, supra*, 180 Cal.App.4th at p. 1348 ["Mr. Ibarra testified clearly and more than once that he was horribly scared, and his fright was not fleeting"]; *Solis, supra*, 90 Cal.App.4th 1002 [prosecutor presented evidence that when victim heard threatening voice message she "became hysterical and started to cry" (*id.* at p. 1016, fn. 6), and that victim later told investigator that she was "very upset and afraid" (*id.* at p. 1009)]), we conclude, in light of all of the circumstances described above, that a jury could reasonably have inferred that Luquin made a threat that actually caused Y.B. to be in sustained fear for her and her daughter's safety.

Accordingly, we conclude that there is sufficient evidence to support the jury's verdict finding Luquin guilty of making a criminal threat.

11

IV.

DISPOSITION

The judgment is affirmed.

_____
AARON, J.

WE CONCUR:


_____
HUFFMAN, Acting P. J.


_____
IRION, J.