Filed 4/14/15  P. v. Steffes CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B253094 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. NA091977) |
| v. | |
| SCOTT STEFFES, | **ORDER MODIFYING OPINION [CHANGE IN JUDGMENT]** |
| Defendant and Appellant. | |

THE COURT:

It is ordered that the opinion filed herein on March 27, 2015, be modified as set forth below.

1.      On the first page, the second full sentence should read:  **Affirmed in part as modified, and reversed in part.**

2.      On page 10, under Part II, Abstract of Judgment, the first paragraph is revised to read the following.

**The Attorney General correctly states that the trial court orally imposed a one year term for defendant's section 667.5, subdivision (b) enhancement, but neither the minute order for the sentencing hearing nor the abstract of judgment reflects that term.  The Attorney General asks that we order the abstract of**

**judgment modified accordingly. Defendant does not address the issue in his reply brief. Although the trial court stated at the sentencing hearing that it was sentencing defendant to a term of 16 years, four months (the total term reflected on the abstract of judgment, but a term that would not include a one year term under section 667.5, subdivision (b)), it expressly stated that it was imposing "an additional year" "for the prior prison term." The trial court was without jurisdiction to impose that one year term, however, because it imposed a five year term under section 667, subdivision (a)(1) based on the same prior conviction that served as the basis for its imposition of the one year term under section 667.5, subdivision (b). (*People v. Jones* (1993) 5 Cal.4th 1142, 1149-1152 [only the greater enhancement under section 667, subdivision (a)(1) and section 667.5, subdivision (b) may be imposed with respect to the same prior conviction].) We may review the trial court's sentencing error in the absence of an objection in the trial court because the trial court imposed an unauthorized sentence. (*People v. Scott* (1994) 9 Cal.4th 331, 354 ["a sentence is generally 'unauthorized' where it could not lawfully be imposed under any circumstance in the particular case"].) We reverse the trial court's order imposing a one year term under section 667.5, subdivision (b).**

3.      On page 11, the disposition is revised to read as follows: **The judgment is affirmed. The abstract of judgment is ordered modified to reflect a total criminal conviction assessment of $90, and a total court security fee of $120.**

Petition for Rehearing is Denied. Change in judgment.

---

MOSK, J.               TURNER, P. J.             KRIEGLER, J.

Filed 3/27/15 (unmodified version)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B253094 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. NA091977) |
| v. | |
| SCOTT STEFFES, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard R. Romero, Judge.  Affirmed as modified.

California Appellate Project, Jonathan B. Steiner, Executive Director, Ann Krausz, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Susan Sullivan Pithey, Supervising Deputy Attorney General, David Zarmi, Deputy Attorney General, for Plaintiff and Respondent.

## INTRODUCTION

A jury convicted defendant and appellant Scott Steffes of two counts of assault by means of force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(4)[1]) and making a criminal threat (§ 422, subd. (a)).  Defendant admitted that he suffered a prior conviction within the meaning of the "Three Strikes" law (§§ 667, subds. (b)-(i) & 1170.12, subds. (a)-(d)); section 667, subdivision (a)(1); and section 667.5, subdivision (b).  The trial court sentenced defendant to 17 years, four months in state prison.  On appeal, defendant contends that the trial court erred in failing to instruct the jury, sua sponte, on attempted criminal threat, a lesser included offense of criminal threat.  The Attorney General contends that the abstract of judgment does not accurately reflect defendant's sentence and the trial court failed to impose certain mandatory assessments and fees.  We affirm the judgment and order the abstract of judgment modified as set forth below.

## BACKGROUND[2]

Kimberly D. met defendant again after many years in September 2011, and dated him on and off for about five months.  In April 2012, they began to date more regularly.  On April 9, 2012, Kimberly moved back into her home after it had been rebuilt following a fire.  She was not fully moved in at the time and was sleeping on the floor.  She invited defendant to stay with her.

About 7:30 p.m. on April 15, 2012, Cindy Juarez, Kimberly's next door neighbor, heard Kimberly screaming for help.  She went outside and saw Kimberly jump out of a window on the side of her house.  Kimberly was wearing only a bra and jeans.  Kimberly was bleeding from her mouth and had marks on her neck and a bump on her head.  She

---

[1]    All statutory citations are to the Penal Code unless otherwise noted.

[2]    Because defendant's claim on appeal concerns only his criminal threat conviction, we focus our recitation of the evidence on that offense and set forth evidence concerning one of his assault convictions for context.

2

seemed nervous and scared and was shaking and crying. Kimberly told Juarez that a man had hit and choked her. Another neighbor called 911 and gave the phone to Kimberly. Kimberly's conversation with the 911 operator was played for the jury. Kimberly told the operator that defendant tried to strangle her and that she had been assaulted.

When Los Angeles Police Department Officer Edwin Nelson arrived, Kimberly was sitting on the ground moaning in pain and crying. She appeared to be afraid. Kimberly told Officer Nelson that defendant had choked her. She believed that he might still be inside the house and armed with a knife. Officer Nelson went to the front of the house. The front door was open, and he could see inside. While at the front door, Officer Nelson smelled a strong odor of natural gas. He decided to wait for the Fire Department to arrive to determine if it was safe to enter. Upon determining that it was safe to enter, Officer Nelson entered the house and observed that all four knobs on the stove were turned on to "full blast." Officer Nelson turned off the gas. Officer Nelson did not find defendant during a search of the house.

Officer Nelson interviewed Kimberly at the hospital. Kimberly was "very emotional," crying, and "fearful." Officer Nelson had a hard time interviewing her. When he asked her questions, she looked away and made statements along the lines of, "I can't believe he did this to me. He's gone too far." Kimberly told Officer Nelson that defendant had been smoking methamphetamine and taking Xanax and had not slept in three nights. Defendant had become paranoid and thought the police were coming to get him, so he pulled down all of the window blinds in the bedroom. When Kimberly pulled up the blinds and told defendant that no one was "out to get [him]," he became angry. He grabbed Kimberly with both hands, pushed her against the wall, and choked her. Kimberly fought back and freed herself. As she tried to run away, defendant punched her numerous times in the head. Kimberly tried to run out the front door, but was unable to reach it; she left the house through a side window.

Officer Nelson asked Kimberly why the stove was on and gas was being emitted. Kimberly responded that she did not know why the stove was on and that it was not on when she exited through the window. During that part of the interview, Kimberly still

3

appeared to be "hysterical." According to Officer Nelson, it was "quite common" for domestic violence victims to provide information at a later day that was not initially reported at the scene of the crime.

On April 16, Los Angeles Police Department Officers Lana Maya and Christopher Eick responded to a burglary call a few blocks from Kimberly's house. There, Officer Maya saw defendant jumping from house to house from the houses' rooftops. Defendant was arrested. After defendant's arrest, Officer Maya returned to the police station and called Kimberly. Kimberly told Officer Maya that defendant told her that he was going to blow up the house if she did not come back and that she saw him turn on the gas to the stove. Kimberly said that she heard that statement while she was in the house.

Later, Kimberly and her father, Jerry D., went to the police station and Kimberly spoke with Officer Maya. Kimberly described the domestic violence incident with defendant. She said that defendant became mad at her and said that he was "gonna fucking blow up the house if she didn't come back in the house." Kimberly said that she saw defendant turn on the gas on the "oven." She was afraid and left through a window. At the preliminary hearing, Officer Maya testified that Kimberly said that defendant turned the knobs on to the "oven" without the flames burning so that gas was emitting, that Kimberly left the house in fear, and that defendant then shouted that if she did not come back, he would "fucking blow it up."

At trial, Kimberly recanted her earlier statements about defendant's domestic violence. She denied that defendant had hit or choked her. She testified that she and defendant engaged in sexual activity that included defendant choking her. She attributed an injury to her eye to that activity. She said that on April 15, she got into a fight with a fellow female longshoreman near the longshoremen's hall. Kimberly lost the fight and attributed other of her injuries to that fight. When the police later interviewed her at the hospital, she said she had falsely said that defendant, and not the female longshoreman, had caused her injuries.

According to Kimberly, when she returned home after the fight, defendant told her that he wanted to break up with her. She became angry and berated and punched

4

defendant.  As defendant tried to pack his belongings in a bag, Kimberly hit him with a wooden paddle.  Although she taunted defendant, he did not hit or choke her.  Defendant took the bag containing his belongings and placed it near the front door.  As he leaned over to place the bag on the floor, Kimberly struck him with a brick.

Kimberly testified that, having bludgeoned defendant with a brick, she did not want to remain in the house.  She exited through a window because defendant was blocking the front door and to "show some drama to the situation."  When she screamed for help, she was doing so to make a scene so everyone would see her.  In her interview with the police at the hospital, she made sure not to reveal enough about the incident that she would be arrested.

Kimberly testified that she did not tell Officer Nelson about "statements about blowing the house up if you don't get back."  She did not hear about such a statement until April 16, when she heard about it from her father.

At some point after the domestic violence incident, Kimberly's father spoke with a neighbor who said "something to the effect that she heard that the gas was being left on again."  He never heard the neighbor say, "I'm going to fucking blow up the house if you don't come back" or say the words "fucking" or "blow up."  Although it was possible that he told Kimberly about the neighbor's statement, he did not think he had.  It was also possible that he told her before they went to the police station on April 16.  Kimberly's father later testified that he was "almost positive" and "pretty sure" that his conversation with the neighbor took place after he went with Kimberly to the police station.  He also said that he initially thought that Kimberly told him that defendant said, "I'm going to fucking blow up the house if you don't come back," but changed his mind when Kimberly said she had not told him of that.  He then testified that he "probably" heard the statement from Kimberly, absent the "F" word, prior to taking her to the police station.

DISCUSSION

## I.     Attempted Criminal Threat

Defendant contends that the trial court erred in failing to instruct the jury, sua sponte, on the lesser included offense of attempted criminal threat because there were reasonable bases for doubting that Kimberly received and understood the threat or that she was in sustained fear.  The trial court did not err.

A trial court has a duty to instruct the jury, sua sponte, on a lesser included offense "whenever there is substantial evidence raising a question as to whether all of the elements of the charged offense are present.  [Citations.]"  (*People v. Lewis* (2001) 25 Cal.4th 610, 645.)  The "substantial evidence" required to trigger a trial court's duty to instruct the jury on a lesser included offense is not any evidence, no matter how weak, but evidence that a jury composed of reasonable persons could conclude that the lesser offense, but not the greater offense, was committed.  (*People v. Cruz* (2008) 44 Cal.4th 636, 664; *People v. Breverman* (1998) 19 Cal.4th 142, 177 ["the sua sponte duty to instruct on a lesser included offense arises if there is substantial evidence the defendant is guilty of the lesser offense, but not the charged offense"].)  A trial court has no duty to instruct the jury on a lesser included offense when "no evidence supports a finding that the offense was anything less than the crime charged.  [Citations.]"  (*People v. Gutierrez* (2009) 45 Cal.4th 789, 826.)  We review de novo a claim that a trial court erred in failing to instruct the jury, sua sponte, on a lesser included offense.  (*People v. Waidla* (2000) 22 Cal.4th 690, 733.)

To prove a criminal threat in violation of section 422, the prosecution must prove the following:  "(1) that the defendant 'willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person,' (2) that the defendant made the threat 'with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out,' (3) that the threat—which may be 'made verbally, in writing, or by means of an electronic communication device'—was 'on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of

purpose and an immediate prospect of execution of the threat,' (4) that the threat actually caused the person threatened 'to be in sustained fear for his or her own safety or for his or her immediate family's safety,' and (5) that the threatened person's fear was 'reasonabl[e]' under the circumstances. [Citation.]" (*People v. Toledo* (2001) 26 Cal.4th 221, 227-228.) Attempted criminal threat is a lesser included offense of criminal threat. (*Id.* at pp. 226, 230-231.)

"Section 422 requires that the threat be '*so* unequivocal, unconditional, immediate, and specific [that it] convey . . . a gravity of purpose and an immediate prospect of execution of the threat . . . .' (Italics added.) It is clear that the nature of the threat cannot be determined only at face value. Section 422 demands that the purported threat be examined 'on its face and under the circumstances in which it was made.' The surrounding circumstances must be examined to determine if the threat is real and genuine, a true threat. [Citations.]" (*In re Ricky T.* (2001) 87 Cal.App.4th 1132, 1137.)

The "sustained fear" element is satisfied when there is "evidence that the victim's fear is more than fleeting, momentary or transitory." (*People v. Culbert* (2013) 218 Cal.App.4th 184, 190; *People v. Allen* (1995) 33 Cal.App.4th 1149, 1151, 1156 [15 minutes of fear may be sufficient to establish the "sustained fear" element]; *People v. Fierro* (2010) 180 Cal.App.4th 1342, 1349 [one minute of fear may be sufficient].) In establishing whether the victim was in a state of sustained fear, the victim's knowledge of the defendant's prior conduct is relevant. (*People v. Allen, supra,* 33 Cal.App.4th at p. 1156.)

A defendant commits an attempted criminal threat when he intends to commit a criminal threat "but is thwarted from completing the crime by some fortuity or unanticipated event." (*People v. Toledo, supra,* 26 Cal.4th at p. 232.) The Supreme Court has explained that "if a defendant, with the requisite intent, orally makes a sufficient threat directly to the threatened person, but for some reason the threatened person does not understand the threat, an attempted criminal threat also would occur. Further, if a defendant, again acting with the requisite intent, makes a sufficient threat that is received and understood by the threatened person, but, for whatever reason, the

7

threat does not *actually* cause the threatened person to be in sustained fear for his or her safety even though, under the circumstances, that person reasonably could have been placed in such fear, the defendant properly may be found to have committed the offense of attempted criminal threat." (*Id.* at p. 231.)

### A. *Evidence that Kimberly Received and Understood the Threat*

Defendant contends that there was evidence from which a reasonable jury could conclude that Kimberly did not directly hear the threat from defendant that he would blow up the house if she did not return—she did not tell the 911 operator or Officer Nelson about defendant's threat and she told Officer Nelson that she did not know why the gas was on and that it was not on when she left the house through a window. At trial, Kimberly denied hearing the threat from defendant and said that her father told her about the threat. Defendant argues that the only evidence that Kimberly heard the threat was Officer Maya's testimony that Kimberly told her of the threat at the police station on April 16. Defendant further claims his argument is "underscored by the fact that although Kimberly was initially so willing to give a detailed report of what occurred that night, she never mentioned" the threat to the 911 operator or to Officer Nelson.

The evidence shows that Kimberly told Officer Maya on the phone that defendant said to her he was going to blow up the house if she did not come back and that she saw him turn on the gas to the stove. Kimberly said that she heard that statement while she was in the house. When Kimberly went to the police station with her father to speak with Officer Maya she again told the officer that defendant said to her that he was going to blow up the house if she did not return and said that she saw defendant turn on the gas. As for Kimberly's claim that she heard about the threat from her father, her father's testimony about his conversation with the neighbor was so equivocal that it was largely without probative value. However, in his description of his conversation with the neighbor, he said that she never said the words "blow up." Moreover, although Kimberly denied that she heard the threat from defendant, she also denied that defendant hit or

choked her or inflicted injuries on her, but the jury necessarily found that testimony incredible and rejected her denials when it convicted defendant of two counts of assault.

As for defendant's claim that his argument is supported by Kimberly's failure to tell the 911 operator or Officer Nelson of the threat even though she was initially "so willing" to provide the details of the domestic violence incident, defendant overstates the record. The transcript of the 911 call consists of three pages. Apart from Kimberly's statement that she had been assaulted, defendant tried to strangle her, and that she "had to jump out," the transcript contains no details of defendant's assault. Of his interview of Kimberly at the hospital, Officer Nelson said, "It was very difficult to interview her. I would ask her a question. Then she would just kind of look off and say things like, 'I can't believe he did this to me. He's gone too far.'" He further testified that domestic violence victims quite commonly provide information at a later time that they did not initially report. Based on the evidence, reasonable jurors could not conclude that Kimberly did not hear defendant threaten to blow up the house unless she returned and that she instead heard about the threat from her father.

### B. Evidence that Kimberly Was in Sustained Fear

Defendant contends that there was substantial evidence that Kimberly was not in sustained fear because she did not tell Officer Maya on April 16 that she was still in fear from defendant's threat and because Kimberly did not accept her father's invitation to stay with him after defendant's assault and before defendant was apprehended but, instead, insisted on returning home where she would be alone. Defendant's claim fails.

Defendant turned on all of the burners on the gas stove and threatened to blow up the house if Kimberly did not return, causing her to jump out of a window dressed only in jeans and a bra. Juarez testified that Kimberly appeared to be afraid when she found her after she had jumped out the window. Officer Nelson testified that when he arrived on the scene, Kimberly appeared to be afraid. Officer Nelson testified that when he tried to interview Kimberly later at the hospital, she was "fearful." Until Kimberly was taken to the hospital, she remained outside the house and in danger from defendant blowing up the

9

house. Kimberly remained in fear from the time she left her house through the window until at least the time she arrived at the hospital. Under the circumstances, Kimberly endured fear of defendant for a period of time that was "more than fleeting, momentary or transitory." (*People v. Culbert, supra,* 218 Cal.App.4th at p. 190; *People v. Allen, supra,* 33 Cal.App.4th at pp. 1151, 1156; *People v. Fierro, supra,* 180 Cal.App.4th at p. 1349.)

### C. *No Substantial Evidence Justified a Lesser Included Offense Instruction*

In view of the evidence discussed above, the trial court did not err by failing to instruct on attempted criminal threat as a lesser included offense of criminal threat because there is no substantial evidence that defendant committed the lesser offense, but not the greater. (*People v. Breverman, supra,* 19 Cal.4th at p. 162.)

## II. Abstract of Judgment

The Attorney General correctly states that the trial court orally imposed a one year term for defendant's section 667.5, subdivision (b) enhancement, but neither the minute order for the sentencing hearing nor the abstract of judgment reflects that term. The Attorney General asks that we order the abstract of judgment modified accordingly. Defendant does not address the issue in his reply brief. Although the trial court stated at the sentencing hearing that he was sentencing defendant to a term of 16 years, four months (the total term reflected on the abstract of judgment, but a term that would not include a one year term under section 667.5, subdivision (b)), it expressly stated that it was imposing "an additional year" "for the prior prison term." Accordingly, we order the abstract of judgment modified to reflect the trial court's oral imposition of a one year term for defendant's section 667.5, subdivision (b) enhancement. (*People v. Crabtree* (2009) 169 Cal.App.4th 1293, 1328.)

The trial court imposed a single $30 criminal conviction assessment (Gov. Code, § 70373) and a single $40 court security fee (§ 1465.8, subd. (a)(1)). The Attorney General argues that the trial court should have imposed a criminal conviction assessment and a

court security fee for each of defendant's three convictions. (*People v. Sencion* (2012) 211 Cal.App.4th 480, 483 [the criminal conviction assessment and court security fee apply to each of a defendant's convictions].) The Attorney General requests that we order the abstract of judgment modified to reflect an additional $140 in assessments and fees—i.e., $60 in criminal conviction assessments and $80 in court security fees. Defendant does not address the issue in his reply brief. The Attorney General is correct. We order the abstract of judgment modified to reflect a total criminal conviction assessment of $90 and a total court security fee of $120 for defendant's three convictions. (*People v. Harbison* (2014) 230 Cal.App.4th 975, 986, fn. 14.)

## DISPOSITION

The judgment is affirmed. The abstract of judgment is ordered modified to reflect a total sentence of 17 years, four months, including a one year term under section 667.5, subdivision (b), a total criminal conviction assessment of $90, and a total court security fee of $120.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

MOSK, J.

We concur:

TURNER, P. J.

KRIEGLER, J.

11