Filed 7/24/13

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE | 2d Crim. No. B238633 |
| Plaintiff and Respondent, | (Super. Ct. No. 2010034201) (Ventura County) |
| v. | |
| GREGORY CULBERT | |
| Defendant and Appellant. | |

We are not sure how a parent should teach his child a lesson. But we are sure how not to do it. Do not pull the trigger of a firearm held to the child's head, even if the firearm is unloaded. This misguided attempt at parenting, coupled with coercive remarks is a crime.

Gregory Culbert appeals his conviction, by jury, of one count of criminal threats (Pen. Code, § 422)[1], 10 counts of possession of a firearm by a felon (§ 29800, subd. (a)(1), formerly, § 12021, subd. (a)(1)), and one count of possession of ammunition by a felon. (§ 30305, subd. (b)(1), formerly, §12316, subd. (b)(1).)[2] The jury further found that appellant personally used a firearm in making the criminal threat. (§ 12022.5, subd. (a)(1).) The trial court sentenced appellant to 11 years in state prison, including a five-year sentence enhancement term based on appellant's prior felony conviction. (§ 667, subd. (a)(1).)

---

[1] All statutory references are to the Penal Code unless otherwise stated.
[2] In 2010, the Legislature repealed former section 12021 and continued it as section 29800. Section 12316 was continued as section 30305.

1

Appellant contends: 1. there is no substantial evidence that he uttered a criminal threat or that the victim was in sustained fear; 2. the trial court erred when it admitted evidence of his prior conviction for having violated section 422; 3. his convictions of being a felon in possession of firearms and ammunition and the prior felony conviction sentence enhancement must be reversed because his prior conviction was reduced to a misdemeanor. In light of our Supreme Court's recent opinion in *People v. Park* (2013) 56 Cal.4th 782, we reverse the five-year sentence enhancement based on appellant's prior felony conviction and each of his convictions of possessing firearms and ammunition. In all other respects, we affirm.

*Facts and Procedural History*

In the summer of 2010, appellant's biological son, C., stepson, H., and their friend L.J. were staying overnight at his house. H. was 15 years old and C. was 14 years old. According to the boys' mother, H. "has ADHD and opposition defiance disorder, so he's difficult . . . ."

C. accused H. of stealing money from him and the boys got into a fist fight. Appellant separated the boys, asked them questions and concluded that H. had stolen the money and was lying about it. Appellant told H. he was in "time out" and told him to wait in the bathroom. H. was mad. He was yelling and cursing at appellant through the bathroom door.

Appellant went into his bedroom, retrieved a loaded `revolver and emptied it. C. testified he heard the sound of bullets hitting a hard surface. H. told police the same thing, although he did not recall this detail during his trial testimony. Appellant took the revolver into the bathroom. H. was sitting on the toilet, cursing at appellant, calling him a "crazy fucker" and telling him to put the gun away. H. knew that appellant generally kept his guns loaded. Appellant spun the cylinder, locked it into place and put the barrel of the gun to H.'s temple. H. was so scared he "just about pooped [his] pants." Appellant told H., "Don't ever lie to me[,]" and "Don't you ever call me that again." Then, appellant pulled the trigger at least once.

C. was in the nearby kitchen when these events occurred. He testified that he heard appellant pull the trigger three times. Meanwhile, H. was screaming things like "I won't, I won't," and "please don't shoot." H. testified that appellant said something after putting the gun to H.'s temple, but H. could not recall what it was. He felt threatened, "very scared" and thought appellant was going to blow his head off.

After appellant lowered the gun, he hugged H. and told him, "let that be a lesson." Then he left the bathroom. A few moments later, appellant told H., "that was just a warning, and I won't really ever hurt you." He warned H. against stealing, telling him "people get killed for less than that."

Jeri, appellant's ex-wife and the mother of C. and H., arrived at appellant's house to pick up the boys. The boys hugged appellant and left. The incident was not reported to the police until a few months later, after an anonymous telephone caller informed the boys' mother about it. She asked H. whether the story was true. He said that the story was true.

When sheriff's deputies arrived at appellant's house to search it, they found multiple firearms and ammunition. Appellant denied carrying a revolver into the bathroom during the incident. He claimed instead to have been holding a glass tequila decanter that was shaped like a gun.

At trial, appellant testified that he did not have a gun when he went into the bathroom to talk to H. about stealing. After he told H. not to lie or steal, the boys left with their mother. They returned later that afternoon and got into another argument. H. had an Airsoft pistol that shoots pellets and he was shooting it at C. Appellant took the toy gun away from H. and sent him back to the bathroom for another time out. He soon followed H., with the glass tequila decanter in his hand. The decanter held some metal ball bearings. He shook it a few times and told H., "Just like that lives are changed forever, like that[.]"

The prosecution introduced evidence that appellant had a prior conviction for violating section 422 by making criminal threats toward his ex-wife, Jeri. Jeri testified that appellant became angry when she would not allow him to have

an unsupervised visit with the children. He came to her apartment uninvited, ripped the screen off of the front door, and broke down the front door. Once inside the apartment, he found Jeri and the children in a bedroom. While the children were present, appellant told Jeri, "I'm going to kill you." She told him she was on the telephone with the police. He went into the kitchen and ripped the telephone off the wall. Appellant then left the apartment.

He later pled guilty to violating section 422. Appellant successfully completed 48 months of felony probation. The trial court reduced his conviction to a misdemeanor, pursuant to section 17, subdivision (b)(3) and "expunged" his conviction pursuant to section 1203.4.

*Criminal Threats*

To prove a violation of section 422, the prosecution must prove, " '(1) that the defendant "willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person," (2) that the defendant made the threat "with the specific intent that the statement ... is to be taken as a threat, even if there is no intent of actually carrying it out," (3) that the threat -- which may be "made verbally, in writing, or by means of an electronic communication device" -- was "on its face and under the circumstances in which it [was] made, ... so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat," (4) that the threat actually caused the person threatened "to be in sustained fear for his or her own safety or for his or her immediate family's safety," and (5) that the threatened person's fear was "reasonabl[e]" under the circumstances.' " (*In re George T.* (2004) 33 Cal.th 620, 630, quoting *People v. Toledo* (2001) 26 Cal.4th 221, 227-228.)

We determine whether the words used by appellant "were sufficiently unequivocal, unconditional, immediate and specific they conveyed to the victim an immediacy of purpose and immediate prospect of execution of the threat" by considering "all the surrounding circumstances and not just the words alone." (*People v. Mendoza* (1997) 59 Cal.App.4th 1333, 1340.) There is no requirement that the

4

threat be unconditional, nor can we judge a threat "solely on the words spoken. It is clear by case law that threats are judged in their context." (*In re Ricky T.* (2001) 87 Cal.App.4th 1132, 1137.) "[I]t is the circumstances under which the threat is made that give meaning to the actual words used. Even an ambiguous statement may be the basis for a violation of section 422." (*People v. Butler* (2000) 85 Cal.App.4th 745, 753.)

Appellant contends he did not utter a criminal threat because the statements "Don't lie to me," and "Don't call me that," contain no explicit or implicit threat to inflict death or great bodily injury. These innocuous statements, he argues, cannot be "magically converted into a criminal threat because appellant put an unloaded gun against [H.'s] head and pulled the trigger." Appellant is incorrect. Few objects are as inherently threatening as a firearm, especially when it is pressed to one's head. The only rational inference, taking into account the entire context in which these statements were made, is that appellant was threatening to harm H. if H. ever again lied or called him names. Appellant didn't need to add a phrase like "or else," or "I'm going to kill you," to make his statements threatening. The firearm pressed against H.'s temple accomplished that result. This is substantial evidence supporting the jury's finding that appellant threatened to commit a crime that would result in death or great bodily injury to H.

Appellant also argues there is no substantial evidence that H's. fear was sustained. He notes that the moment he held the firearm to H.'s head and pulled the trigger, "could not have lasted more than a split second. [H.] knew the firearm was unloaded. Even if [H.] did not know the firearm was unloaded -- the record indicates he did -- he knew the instant appellant pulled the trigger. Any fear [H.] experienced from the incident was instantly over." This argument misstates the record and misapprehends the nature of fear.

First, there is substantial evidence that H. suffered sustained fear. This element of the offense is satisfied where there is evidence that the victim's fear is more than fleeting, momentary or transitory. (*People v. Allen* (1995) 33 Cal.App.4th 1149,

5

1156.)  Even if the encounter lasts only one minute, a person who is confronted with a firearm held by an angry perpetrator and who believes their death is imminent, suffers sustained fear.  (*People v. Fierro* (2010) 180 Cal.App.4th 1342, 1349.)

Here, H. testified that when he saw the firearm, he backed away from appellant, "scooted" between the toilet and the wall, and screamed "please don't shoot," among other things.  H. believed appellant was about to blow his head off.  He "was pretty scared," and "just about pooped [his] pants."  C. described him as "screaming" during the incident.  H. was crying and his face was red when he left the bathroom afterwards.  H.'s mother testified that his behavior changed for the worse after the incident.  His next school year went "horribly[,]" because H. was "being vicious" and had become "obsessed" with a rubber pellet firearm.  He kept a bat by the front door and knives hidden on the headboard of his bed.  He did not sleep well and had nightmares that caused him to "wake up screaming[.]"  This is substantial evidence that H. actually suffered sustained fear.

Second, the idea that H. did not experience sustained fear because he knew within a "split second" that the firearm was unloaded is, at least in our opinion, preposterous.  H. realized the firearm was unloaded only because he was still breathing after appellant stopped pulling the trigger.  H. must have had a sense of relief when he saw that he had not been shot.  Experiencing relief that one has survived is not the same thing, however, as having one's fear evaporate.  The jury could easily infer from the evidence of H's conduct both during and after the incident that his fear was sustained, and not "instantly over." [3]

---

[3] Appellant relies heavily on H.'s statement to police that he thought the gun was unloaded because, like C., he heard bullets falling on the desk in appellant's bedroom.  This does not negate the possibility that H. suffered sustained fear.  H. may have been uncertain about whether appellant had actually removed every single bullet from the gun or whether he might use it to hit H.  Even if H. was completely confident the gun was unloaded, a jury could reasonably infer that he would be traumatized by having a gun pressed against his temple while his angry stepparent pulled the trigger.

*The 1999 Prior*

Appellant contends the trial court abused its discretion when it admitted evidence of his 1999 conviction for making a criminal threat against his ex-wife because the prior offense occurred more than 10 years ago and its potential for undue prejudice substantially outweighed its probative value. (Evid. Code, §§ 352, 1109, subd. (e).) We are not persuaded.

Evidence Code section 1101 subdivision (a) provides that, as a general rule, character evidence is inadmissible to prove a person's conduct on a specific occasion. Evidence that a defendant has committed a prior crime or other bad act may, however, be admissible "when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident . . . ) other than his or her disposition to commit such an act." (Evid. Code, § 1101, subd. (b).) Where the defendant is charged with an offense involving domestic violence, "evidence of the defendant's commission of other domestic violence is not made inadmissible by [Evidence Code] Section 1101 if the evidence is not inadmissible pursuant to [Evidence Code] Section 352." (Evid. Code, § 1109, subd. (a)(1).)

Section 352 of the Evidence Code grants the trial court discretion to exclude evidence "if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." The statute requires that "the probative value of the evidence must be balanced against four factors: (1) the inflammatory nature of the uncharged conduct; (2) the possibility of confusion of issues; (3) remoteness in time of the uncharged offenses; and (4) the amount of time involved in introducing and refuting the evidence of uncharged offenses." (*People v. Branch* (2001) 91 Cal.App.4th 274, 282; see also *People v. Harris* (1998) 60 Cal.App.4th 727.) We review the trial court's determination for abuse of discretion and will affirm it unless the ruling was " 'arbitrary, whimsical, or capricious as a matter of law.' " (*Id.*)

Appellant's prior offense had probative value. Appellant threatened to kill H. and C.'s mother. Regardless of whether appellant was armed when he broke into the apartment and made the threat, his conduct was relevant to show his intent that his statements be understood as threats, his propensity to make threats to family members and the reasonableness of H.'s fear after the threat was made. Appellant's prior conduct was not unduly inflammatory: his ex-wife did not recall appellant being armed when he broke into her apartment and he did not actually injure her or the children. There was no possibility the prior incident would be confused with the charged crime because they occurred at different times and places and only the prior incident involved appellant's ex-wife. Describing the prior incident was not time consuming. The ex-wife's testimony took only about five pages of the trial transcript; appellant's discussion of it consumed about eight pages.

As appellant points out, the prior incident was not recent, having occurred 11 years before the present offense. But this length of time does not mandate exclusion of the evidence. (*People v. Johnson* (2010) 185 Cal.App.4th 520, 539.) In both incidents, appellant confronted family members in a small room and threatened to kill them. H. was present at both incidents. Given the similarities between the two incidents and the prior incident's relevance in proving appellant's intent and H.'s reasonable fear, the trial court had discretion to admit the evidence.

*Section 667 Prior Felony Conviction Enhancement*

In connection with the 1999 incident, appellant pleaded guilty to one felony count of making a criminal threat in violation of section 422. The trial court suspended imposition of sentence and granted probation on the condition, among others, that appellant serve 180 days in county jail. After appellant completed 48 months of probation, the trial court reduced the conviction to a misdemeanor pursuant to section 17, subdivision (b)(3), withdrew appellant's guilty plea, entered a plea of not guilty and dismissed the case pursuant to section 1203.4.

At sentencing in the present matter, the trial court relied on this 1999 conviction to impose a five-year sentence enhancement pursuant to section 667,

8

subdivision (a). Appellant contends the trial court erred because his prior conviction, having been reduced to a misdemeanor, does not qualify as a prior serious felony within the meaning of section 667, subdivision (a). In light of our Supreme Court's opinion in *People v. Park, supra,* and the People's concession, we agree.

In *Park, supra,* our Supreme Court considered whether a sentence enhancement under section 667, subdivision (a), for a prior serious felony conviction, could be imposed where the defendant's prior conviction of assault with a deadly weapon had been reduced to a misdemeanor (§ 17, subd. (b)), before the case was dismissed pursuant to section 1203.4. It held the enhancement could not be imposed because, "when the court in the prior proceeding properly exercised its discretion by reducing the assault with a deadly weapon conviction to a misdemeanor, that offense no longer qualified as a prior serious *felony* within the meaning of section 667, subdivision (a), and could not be used, under that provision to enhance defendant's sentence." (*People v. Park, supra,* 56 Cal.4th at p. 787, emphasis in original.)

*Park* controls the result here. For purposes of section 667, subdivision (a), appellant's prior conviction is deemed to be a misdemeanor, not a felony. As a consequence, at the time of his prosecution in this matter, he was not a person who had previously been convicted of a serious felony. (*Id.* at p. 798.) That portion of the judgment imposing the five-year sentence enhancement pursuant to section 667, subdivision (a) must be reversed.

### *Firearm and Ammunition Possession Offenses*

Appellant contends he did not violate former section 12021 or former section 12316 by possessing firearms and ammunition because his 1999 felony conviction was reduced to a misdemeanor and dismissed. For the reasons stated above, we agree.

Section 12021 is violated when a person who has been convicted of a felony owns, possesses, or has custody or control over a firearm. Any person who is prohibited by section 12021 from owning or possessing a firearm is also prohibited from owning or possessing ammunition. (§ 12316.) At the time he was prosecuted

9

for having violated these statutes, however, appellant had not been convicted of a felony because his prior conviction was declared a misdemeanor. (*Park, supra,* at p. 798.) Appellant was not a "person who has been convicted of a felony" within the meaning of sections 29800 (former section 12021) and 30305 (former section 12316). He could not, as a matter of law, have violated those statutes by possessing firearms and ammunition. Appellant's convictions of the firearms and ammunition possession offenses must be reversed.

*Disposition*

The convictions as to counts 2 through 11, for violations of former section 12012 and former section 12316, are reversed. The imposition of a sentence enhancement pursuant to section 667, subdivision (a)(1) is reversed. In all other respects, the judgment and six-year prison term sentence are affirmed.

<u>CERTIFIED FOR PUBLICATION</u>

YEGAN, J.

We concur:

GILBERT, P.J

PERREN, J.

10

Charles W. Campbell, Judge

Superior Court County of Ventura

_____

Eric Cioffi, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., Supervising Deputy Attorney General, Seth P. McCutcheon, Deputy Attorney General, for Plaintiff and Respondent.