Filed 6/7/16  P. v. Johnson CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JASON CHAD JOHNSON,<br><br>    Defendant and Appellant. | G050691<br><br>(Super. Ct. No. 14WF1440)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Kimberly Menninger, Judge.  Affirmed with directions.

Valerie G. Wass, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Marilyn L. George and Quisteen S. Shum, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

Defendant Jason Chad Johnson appeals from the judgment following conviction of receiving stolen property (Pen. Code, § 496, subd. (a); all further statutory references are to this code; count 1), making a criminal threat (§ 422, subd. (a); count 2), and brandishing a deadly weapon (§ 417, subd. (a)(1); count 4). The jury also found true that defendant had used a deadly weapon (a samurai sword) in connection with count 2. The trial court sentenced him to the middle term of two years on count 2 with a consecutive one-year term for the personal use of a deadly weapon enhancement, and a concurrent middle term of two years on count 1.

Defendant contends substantial evidence does not support his conviction for making a criminal threat. He also asks this court in the first instance to reduce his felony conviction for receiving stolen property (count 1) to a misdemeanor under Proposition 47, which became effective while this appeal was pending. (*People v. Diaz* (2015) 238 Cal.App.4th 1323, 1328 (*Diaz.*)) We affirm the judgment and deny defendant's request for this court to redesignate his felony conviction on count 1 as a misdemeanor.

FACTS

One evening, Donald Underdale was walking his dog in Leisure World, a gated community for senior citizens where he resided, when he noticed defendant coming out of a crouched position between two support beams at a house under construction owned by Mauricio Rivero. Defendant was the only person there, but he was not an employee of the general contractor remodeling the house and Rivero had never seen or met him before.

Underdale was about 60 to 70 feet away when he first saw defendant. Believing defendant was either vandalizing or stealing property "because there's no reason to be in there at that time," Underdale asked defendant, "Hey, what are you

2

doing?" Defendant did not respond. Underdale repeated the question two more times "with a little more emphasis" but defendant continued to ignore him.

Defendant walked out of the construction zone and got on a bicycle parked on the sidewalk. As he started to ride away, Underdale told him, "Stop right now. I need to talk to you." Defendant stopped, got off the bicycle, "pulled [out] a giant Samurai sword" attached to his bicycle, "raised it up in the air and started . . . moving quickly towards [Underdale] aggressively with that sword." As he did so, defendant said to Underdale, "Hey, what are you going to do now, mother fucker?" Defendant appeared to be "gunning for" Underdale, who was about 20 feet away.

Believing defendant was going to attack him with the sword, and fearing for his and his dog's life, Underdale retreated with his dog around a corner. Underdale came across a neighbor and warned her not to proceed because there was "a nut with a sword." She laughed and walked around the corner to see and confirmed she "saw [defendant] leaving on the bike."

Underdale called 911 and gave the responding police officer, Jeff Gibson, a description of defendant and the direction in which he was traveling. Within 10 minutes Gibson located defendant and his bicycle. The sword had a 28-inch blade and was mounted on the bicycle. A bag containing a cordless drill and cordless drill battery charger, among other things, was tied to the handlebars of the bicycle. The cordless drill belonged to the contractor working on Rivero's house.

Underdale told Gibson at the scene of the incident that he was "scared to death." At trial, Underdale testified he remained so fearful for his safety knowing "this man had a sword" that he bought a firearm.

DISCUSSION

*1. Substantial Evidence of Criminal Threat*

Defendant contends the evidence was insufficient to support his conviction for making a criminal threat. We disagree.

"In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] Reversal on this ground is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].'" (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

In order to convict a defendant of making a criminal threat "in violation of section 422, the prosecution must prove "'(1) that the defendant 'willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person,' (2) that the defendant made the threat 'with the specific intent that the statement . . . be taken as a threat, even if there is no intent of actually carrying it out,' (3) that the threat—which may be 'made verbally, in writing, or by means of an electronic communication device'—was 'on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat,' (4) that the threat actually caused the person threatened 'to be in sustained fear for his or her own safety or for his or her immediate family's safety,' and (5) that the threatened person's fear was 'reasonabl[e]' under the circumstances.'"" (*People v. Culbert* (2013) 218 Cal.App.4th 184, 189 (*Culbert*).) Defendant challenges the first and third elements.

Defendant argues his statement, "Hey, what are you going to do now, mother fucker," by itself "did not constitute a threat to commit a crime that would cause

4

great bodily injury or death to a person." But "the determination whether a defendant intended his words to be taken as a threat, and whether the words were sufficiently unequivocal, unconditional, immediate and specific they conveyed to the victim an immediacy of purpose and immediate prospect of execution of the threat can be based on all the surrounding circumstances and not just on the words alone." (*People v. Mendoza* (1997) 59 Cal.App.4th 1333, 1340-1341 [although words "'you fucked up my brother's testimony. I'm going to talk to some guys from Happy Town' – did not articulate a threat to commit a specific crime resulting in death or great bodily injury" "jury was free to interpret the words spoken from all of the surrounding circumstances of the case"].) "There is no requirement that the threat be unconditional, nor can we judge a threat 'solely on the words spoken. It is clear by case law that threats are judged in their context.' [Citation.] '[I]t is the circumstances under which the threat is made that give meaning to the actual words used. Even an ambiguous statement may be a basis for a violation of section 422.'" (*Culbert, supra*, 218 Cal.App.4th at p. 190.)

In *Culbert, supra*, 218 Cal.App.4th 184, the defendant confronted his stepson H., held an unloaded revolver to H's head, and said "'[d]on't ever lie to me'" and "'[d]on't you ever call me that again,'" before pulling the trigger. (*Id.* at p. 188.) The appellate court rejected the defendant's contention his statements contained no explicit or implicit threat to inflict death or great bodily injury. "Few objects are as inherently threatening as a firearm, especially when it is pressed to one's head. The only rational inference, taking into account the entire context in which these statements were made, is that appellant was threatening to harm H. if H. ever again lied or called him names. Appellant did not need to add a phrase like 'or else,' or 'I'm going to kill you,' to make his statements threatening. The firearm pressed against H.'s temple accomplished that result." (*Id.*, at p. 190.)

Similarly, here, the jury reasonably could conclude defendant's statement, "Hey, what are you going to do now, mother fucker[,]" made while defendant raised a

Samurai sword with a 28-inch blade and approached Underdale quickly and aggressively, constituted a threat to commit a crime resulting in death or great bodily injury if Underdale did anything other than retreat. Whether, as defendant claims, the evidence could have supported the view that he "made the statement . . . so that he could leave the scene without being delayed or detained which would allow him to complete the theft of the drills" was a question for the jury. The only query on a substantial evidence review is whether the record supports the judgment. Having found that it does, we also reject defendant's arguments regarding the lack of prior history or disagreements between himself and Underdale. These contentions essentially require this court to reweigh the evidence and evaluate the credibility of witnesses, while ignoring the substantial evidence standard of review.

Defendant also argues his statement was not sufficiently unequivocal to convey to Underdale an immediate prospect the threat would be executed because (1) he was not within punching or touching distance of Underdale, (2) the closest defendant came to Underdale was about 20 feet, and (3) there was no evidence defendant pursued Underdale. We are not persuaded.

Section 422 does not require an absolutely unconditional threat, but that the threat be "so . . . unconditional . . . as to convey to the person threatened, a gravity of purpose and immediate prospect of execution." (*People v. Bolin* (1998) 18 Cal.4th 297, 339-340, italics omitted.) "'The use of the word "so" indicates that unequivocality, unconditionality, immediacy and specificity are not absolutely mandated, but must be sufficiently present in the threat and surrounding circumstances to convey gravity of purpose and immediate prospect of execution to the victim.'" (*Id.* at p. 340; see *People v. Franz* (2001) 88 Cal.App.4th 1426, 1448 [the "defendant's shushing noise, accompanied by the throat-slashing gesture, was 'so' unequivocal that it conveyed to Zook and Immer a sufficient gravity of purpose and immediate prospect of execution of the threat"].)

6

In this case, upon hearing defendant's statement and seeing him approach aggressively with the raised sword, Underdale immediately retreated around the corner as fast as he could, believing defendant would use the sword to hurt or kill him.  Under these facts, the jury could find the threat was sufficiently unequivocal as to convey to Underdale a "gravity of purpose and immediate prospect of execution."  (*People v. Bolin, supra*, 18 Cal.4th at p. 340.)

*2.  Proposition 47*

Defendant contends this court should, in the first instance, reduce his felony conviction for receiving stolen property to a misdemeanor under Proposition 47 and that any requirement that he first file a petition in the superior court violates principles of equal protection.  We disagree.

Proposition 47 added section 1170.18.  Subdivision (a) of that statute, upon which defendant relies, allows a defendant currently serving a sentence for a felony conviction to petition to have that felony reduced to a misdemeanor.  "For persons currently serving sentences for a felony conviction that would be a misdemeanor under Proposition 47 . . . the initiative specifies the procedures for relief.  'A person currently serving a sentence for a conviction, whether by trial or plea, of a felony or felonies who would have been guilty of a misdemeanor under the act that added this section . . . had this act been in effect at the time of the offense may petition for a recall of sentence before the trial court that entered the judgment of conviction in his or her case to request resentencing . . . . '  (§ 1170.18, subd. (a).)"  (*Diaz, supra*, 238 Cal.App.4th at pp. 1328-1329, italics omitted.)

"The procedure for ruling on a petition for recall requires the trial court to determine whether the prior conviction would be a misdemeanor under Proposition 47, in which case 'the petitioner's felony sentence shall be recalled and the petitioner resentenced to a misdemeanor . . . unless the court, in its discretion, determines that

7

resentencing the petitioner would pose an unreasonable risk of danger to public safety.' (§ 1170.18, subd. (b).)" (*Diaz, supra*, 238 Cal.App.4th at p. 1329.) "[T]he plain language of section 1170.18 set forth above demonstrates that . . . for persons who are currently serving a sentence for a felony reduced by Proposition 47 . . . the remedy lies in the first instance by filing a petition to recall." (*Id.* at p. 1331.)

The trial court, not the appellate court, is vested with the authority to reduce a defendant's sentence pursuant to section 1170.18. (*People v. Awad* (2015) 238 Cal.App.4th 215, 221-222 (*Awad*).) "Nothing in section 1170.18 suggests that in the first instance the appellate court can designate a prior felony conviction for a Proposition 47 offense to be a misdemeanor." (*Diaz, supra*, 238 Cal.App.4th at p. 1333.) "[T]here can be no doubt that to obtain a redesignation as a misdemeanor for all purposes, section 1170.18 requires the filing of an application in the superior court of conviction." (*Ibid.*)

Under the above authorities, this court does not have the authority to redesignate defendant's felony conviction for receiving stolen property to a misdemeanor. And although defendant did file a petition for resentencing in the superior court on December 16, 2014, the trial court would not have had jurisdiction to rule on it while this appeal was pending. (*Awad, supra*, 238 Cal.App.4th at pp. 220, 224.)

According to defendant, such a rule places him and others like himself in a bind because "a defendant might have to serve months or years of dead dime awaiting the conclusion of their appeal." We addressed this in *Awad*, where we "construe[d] Proposition 47 together with section 1260 to authorize a limited remand to the trial court to hear a postconviction motion to recall a sentence under section 1170.18." (*Awad, supra*, 238 Cal.App.4th at p. 222.) We did so to resolve a "Hobson's choice" faced by Awad and other similarly situated defendants: "On the one hand, they can wait to seek Proposition 47 relief until they complete their appeals from the underlying judgment of conviction. But by then, it may be too late to gain any benefit from a sentencing reduction because they already will have served the time in question. On the other hand,

8

they can give up any pending appeal in order to obtain speedy Proposition 47 relief from the trial court." (*Id.* at p. 218.)

But here, such a limited remand is unnecessary. The sentence on defendant's felony conviction on count 1 for receiving stolen property was ordered to run concurrently to his sentence for making a criminal threat. Thus, any redesignation of count 1 to a misdemeanor would not affect the sentence defendant is required to serve. (*Id.* at p. 218.) Nevertheless, similar to what we did in *Awad, supra*, 238 Cal.App.4th at p. 225, we shall order the trial court to consider and rule on defendant's section 1170.18 petition filed on December 16, 2014 within 45 days after the issuance of the remittitur.

DISPOSITION

The judgment is affirmed. Once the remittitur is issued, the trial court is to consider and rule on defendant's section 1170.18 petition filed on December 16, 2014 within 45 days thereafter.

RYLAARSDAM, ACTING P. J.

WE CONCUR:

MOORE, J.

THOMPSON, J.

9