Filed 10/19/21 P. v. Haywood CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RUFUS MAXIMILLION HAYWOOD,<br><br>    Defendant and Appellant. | 2d Crim. No. B303696<br>(Super. Ct. No. 2019010606)<br>(Ventura County) |

Ruwefus Maximillion Haywood appeals a judgment following conviction of felony infliction of injury upon a person with whom he was in a dating relationship, and misdemeanor disobedience of a court order, with a finding that he was on bail at the time he committed the offenses. (Pen. Code, §§ 273.5, subd. (a), 166, subd. (a)(4), 12022.1, subd. (b).)[1] We affirm.

This appeal involves Haywood's acts of domestic violence committed against his girlfriend, C.A., in the early morning

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

hours of March 30, 2019, and his later violation of an emergency protective order.  At trial, C.A. recanted the allegations and testified that she had fabricated them.  The jury nevertheless convicted Haywood.  He now appeals and raises issues of asserted juror misconduct and erroneous admission of prior acts of domestic violence.

*FACTUAL AND PROCEDURAL HISTORY*

On March 30, 2019, Oxnard Police Officer Jeffrey Ramirez responded to a domestic violence call on Brianna Circle in Oxnard.  He interviewed C.A. who reported that Haywood had struck her in the face and placed his hands on her neck.  Ramirez saw that C.A.'s face was red and swollen and that she was emotional.  C.A. stated that Haywood left the residence in her truck.  She added that she wanted him to leave her alone and not return because she could not "deal with it anymore."  Ramirez videotaped the interview.  At trial, the prosecutor played the recording.

Ramirez encouraged C.A. to obtain a medical evaluation from paramedics.  The paramedics arrived and evaluated C.A. They advised her to visit the hospital for further evaluation.  C.A. declined to accompany them to the hospital, but her daughter-in-law drove her there.

Prior to C.A. leaving the residence for the hospital, Ramirez interviewed her again.  She said that she was asleep when Haywood returned home in the early morning.  He touched her sexually, but she wanted to sleep and discouraged him.  Haywood became angry and cursed at her.  C.A. became angry in return and Haywood responded by striking her and twice grabbing her neck.  C.A. complained that her face hurt.  This interview was also videotaped and the recording played at trial.

2

Later that morning, Ramirez arrested Haywood at C.A.'s residence.  In a videotaped interview, Ramirez questioned Haywood about the domestic violence against C.A.  Haywood had no recollection of the incident.  Ramirez sensed an odor of alcohol on Haywood, who volunteered that he also consumed pain medication for chronic pain.

At C.A.'s request, Ramirez obtained an emergency protective order on her behalf and served Haywood.  He also advised Haywood that he could not contact C.A., including by telephone.

Ramirez then visited the hospital to provide C.A. a copy of the protective order.  There, Haywood telephoned C.A.  Ramirez advised C.A. that she was not obligated to accept the call, but if she did, Haywood would be charged with violating the protective order.  C.A. accepted the call and, at Ramirez's request, she placed Haywood on speaker-phone.  Ramirez recorded the conversation which was played at trial.  During the conversation, Haywood stated that he had been intoxicated and had no memory of the incident.

Approximately 10 days later, C.A. informed the Ventura County District Attorney that she did not wish to proceed with the charges against Haywood.  She stated that she had fabricated the allegations in anger because Haywood spent the evening drinking with a friend.  On May 1, 2019, C.A. asked that the emergency protective order be removed.  It was then removed at her request.

At trial, C.A. recanted her complaints against Haywood and stated that "[e]verything [she] said to the officer was a lie."  She testified that Haywood's paramour attacked her and caused the injuries to her face and neck.  C.A. claimed that Ramirez

3

forced her to obtain medical attention and directed her to answer Haywood's telephone call at the hospital. C.A. also explained that during the call, she informed Haywood that he had struck her because she was angry with him.

The jury convicted Haywood of the felony domestic violence count and the misdemeanor disobedience of a court order count, and found that he committed the offenses while on bail. (§§ 273.5, subd. (a), 166, subd. (a)(4), 12022.1, subd. (b).) The trial court sentenced Haywood to a six-year prison term, including a two-year term for the on-bail enhancement. The court ordered Haywood to pay victim restitution and awarded him 48 days of presentence custody credit. The court found Haywood had no financial ability to pay fines and fees.

Over defense objection on grounds of Evidence Code section 352 and due process of law, the trial court permitted evidence of Haywood's three convictions for domestic violence: a 1991 misdemeanor conviction, a 2009 felony conviction (based upon 2008 act), and a 2012 felony conviction. The convictions were obtained in different counties and concerned different victims. The court admitted evidence of the convictions, not the underlying conduct, pursuant to Evidence Code section 1109.

Haywood appeals and contends that the trial court erred by: 1) not inquiring into asserted juror misconduct, and 2) admitting evidence of his three prior domestic violence convictions (§ 273.5; Evid. Code, § 1109). He asserts that the errors denied him due process of law and a fair trial pursuant to the federal and state constitutions.

4

*DISCUSSION*

*I.*

Haywood argues that the trial court abused its discretion and violated his constitutional rights by not investigating asserted juror misconduct during deliberations. He asserts that the error is prejudicial and requires reversal.

On the morning of the second day of jury deliberations, Juror No. 10 submitted this note to the trial court: "[D]uring deliberations on Friday I heard a juror I believe she is Juror #6 say 'I knew as soon as I heard the date 3/30 what happened' then she stated her position on the case. (I will leave out her position.) My concern is that despite your instruction at every break and recess, she had already formed [an] opinion without having all evidence[.]"[2] The court then discussed the note with counsel and indicated that "the more cautious approach" would be to reinstruct the jurors to keep an open mind and deliberate with other jurors. Haywood responded that the matter was serious, the remaining jurors should be questioned, Juror No. 10 should be questioned, and Juror No. 6 replaced. After a brief recess, the court decided to reinstruct with CALCRIM No. 3550 ["Pre-Deliberation Instructions"] regarding the duty to deliberate, an open mind, and the exchange of thoughts and ideas. The court also instructed that it was to be informed regarding any juror unable to follow the law. Haywood then responded to the court that Juror No. 6 represented during voir dire that she had a friend employed by District Attorney Totten as a secretary or executive assistant and that Juror No. 6 may be receiving extraneous information regarding the prosecution. The court

---

[2] The jurors deliberated approximately one and one-half hours on Friday.

5

acknowledged Haywood's comments but stated that it would not change its ruling.

The trial court may remove any juror who is unable to perform his or her duty. (§ 1089 [trial court may remove a juror if the juror "upon . . . good cause shown to the court is found to be unable to perform his or her duty"].) The court must not intrude too deeply into the jury's deliberative process, however, to avoid invading the sanctity of the deliberations or coercing deliberations. (*People v. Fuiava* (2012) 53 Cal.4th 622, 710.) Not every report of juror conduct requires an investigation by the court. (*People v. Cleveland* (2001) 25 Cal.4th 466, 478.) A hearing is required only where the court possesses information which, if proven true, would constitute good cause to doubt a juror's ability to perform his or her duties and justify removal from the case. (*People v. Ray* (1996) 13 Cal.4th 313, 343-344.) Before conducting an investigation into allegations of juror misconduct, it is often appropriate to reinstruct the jury and return them to deliberations. (*Cleveland*, at p. 480.) " 'The specific procedures to follow in investigating an allegation of juror misconduct are generally a matter for the trial court's discretion.' " (*People v. Johnsten* (2021) 10 Cal.5th 1116, 1170.)

The trial court did not abuse its discretion by reinstructing the jury and not conducting an investigation. Contrary to Haywood's speculation and suspicion, Juror No. 6's reference to the date "3/30" did not reasonably suggest that she was considering or relying upon extrinsic evidence relayed by a friend in the District Attorney's office. Trial in this prosecution occurred seven months following the alleged domestic violence against C.A. committed on March 30. The domestic violence, although serious and frightening to C.A., was unlikely to have

6

captured the public's interest or memory.  The most reasonable inference from this ambiguous reference is that Juror No. 6 was referring to the first words of the prosecutor's opening statement announcing the day that the charged offenses were committed.

Moreover, Juror No. 6's statement was made during deliberations and referred to her previous state of mind during trial.  It did not indicate an intention to ignore the rest of the trial, including evidence, argument, instructions, or the views of other jurors.  (*People v. Allen and Johnson* (2011) 53 Cal.4th 60, 73.)  "The reality that a juror may hold an opinion at the outset of deliberation is . . . reflective of human nature." (*Id.* at p. 75, citation omitted.)  Juror No. 10's note did not indicate that Juror No. 6 did not maintain an open mind, consider the evidence, or refuse to deliberate.  The trial court appropriately reinstructed the jurors and directed them to inform it if other jurors were not following the law.  As no further complaint ensued, the court was not required to conduct an investigation.  (*People v. Burgener* (2003) 29 Cal.4th 833, 878-879.)  There was no juror misconduct and an investigation was not required.

## *II.*[3]

Haywood contends that the trial court abused its discretion by admitting evidence of his 1991, 2009, and 2012 domestic violence convictions.  Specifically, he asserts that two convictions were remote in time and the three convictions considered together (18-year span) did not establish a frequent or unbroken pattern of domestic violence.  Haywood adds that the evidence was unduly prejudicial and cumulative pursuant to section 352.  He asserts that the error was prejudicial, characterizing the

---

[3] All statutory references in part *II* refer to the Evidence Code unless stated otherwise.

7

prosecution as "close" and pointing out that the prosecutor frequently commented upon the prior convictions during opening argument and summation.

The trial court held a hearing regarding the prosecutor's motion to introduce domestic violence propensity evidence. The court decided to allow evidence of Haywood's three prior domestic violence convictions, but not the underlying conduct of the convictions or another 13 uncharged acts of violence committed between 2009 and 2017. In ruling, the court explained that evidence of the underlying conduct was too prejudicial and that evidence of the 13 uncharged acts would necessitate an undue consumption of time.[4] The court also rejected the argument of remoteness of the oldest (1991) misdemeanor conviction reasoning that it demonstrated an overall pattern of behavior by Haywood.

Section 1109 applies to evidence establishing that a defendant accused of an offense involving domestic violence has committed other domestic violence. (*People v. Baker* (2021) 10 Cal.5th 1044, 1089.) By this statute, the Legislature has determined that recidivist conduct of domestic violence is probative because of its repetitive nature. (*People v. Brown* (2000) 77 Cal.App.4th 1324, 1334.) Moreover, the language of the statute does not require "a [temporal] pattern" of domestic violence. (*People v. Thomas* (2021) 63 Cal.App.5th 612, 629 [case law affirms admission of remote evidence where evidence was similar to charged offense].)

---

[4] There also was a pending prosecution in another county against Haywood for acts of domestic violence against a different victim, A.J.

8

Although evidence of past domestic violence is presumptively admissible, section 1109, subdivision (e) establishes the opposite presumption for evidence that is more than 10 years old.  That evidence is presumptively inadmissible unless the trial court determines that the admission of this evidence is in the interest of justice.  (*People v. Thomas*, *supra*, 63 Cal.App.5th 612, 628.)

Section 1109 propensity evidence applies, however, only if it is not inadmissible pursuant to section 352.  (*People v. Baker*, *supra*, 10 Cal.5th 1044, 1089.)  Section 352 requires that the probative value of the evidence must be balanced against four factors:  1) the inflammatory nature of the prior conduct; 2) the possibility of confusion of issues; 3) the remoteness in time of the prior offenses; and 4) the amount of time involved introducing and refuting the evidence of prior offenses.  (*People v. Thomas*, *supra*, 63 Cal.App.5th 612, 630.)  The principal factor affecting the probative value of prior domestic violence is its similarity to the charged offense.  (*People v. Johnson* (2010) 185 Cal.App.4th 520, 531.)  We review the trial court's decision to admit or exclude propensity evidence for an abuse of discretion.  (*Thomas*, at p. 626.)

The trial court did not abuse its discretion by admitting evidence of the three convictions, although two of them rested upon acts committed more than 10 years prior.  (§ 1109, subd. (e); *People v. Culbert* (2013) 218 Cal.App.4th 184, 192-193 [affirming admission of evidence of domestic violence committed 11 years prior to charged offense].)  Haywood's argument of remoteness is enabled by the court's exclusion of the frequent uncharged domestic violence conduct committed between 2009 and 2017, an obvious pattern of behavior.  The court's ruling rested upon

express recognition of section 1109, subdivision (e), section 352, and a careful balancing of probative value versus prejudice and undue consumption of time. The court found the three prior convictions probative and excluded evidence of the underlying conduct, thereby minimizing undue prejudice to Haywood. Moreover, the evidence rested upon convictions of Penal Code section 273.5, subdivision (a), not uncharged acts. Section 1108 does not require that the prior acts of domestic violence be against the same victim nor does the statute require "a pattern" defined by specific time periods. The trial court's ruling was reasonable and Haywood has not met his burden of establishing an abuse of discretion.

We do not consider Haywood's contention that the prosecutor committed misconduct during summation by referring to Haywood's abuse of "women." The topic of gender was not in evidence. Haywood forfeited this contention by failing to object.

The judgment is affirmed.

NOT TO BE PUBLISHED.

GILBERT, P. J.

We concur:

PERREN, J.

TANGEMAN, J.

10

Ryan J. Wright, Judge

Superior Court County of Ventura

_____

Nancy Wechsler, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Xavier Becerra, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Michael R. Johnsen and Charles S. Lee, Deputy Attorneys General, for Plaintiff and Respondent.