Filed 9/30/25  P. v. Thomas CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>          v.<br><br>RHUBEN ALAN THOMAS,<br><br>    Defendant and Appellant. | F088835<br><br>(Super. Ct. No. CR-21-001250)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Stanislaus County.  Kellee C. Westbrook, Judge.

Matthew J. Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Ivan P. Marrs and Corinne D. Heinstein, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Appellant Rhuben Alan Thomas was convicted by jury of one count of attempted robbery (Pen. Code, §§ 211/664).  In a bifurcated court trial, the court found that

appellant had suffered four prior strike convictions (Pen. Code, § 667, subds. (b)-(i)) and four serious felony convictions (Pen. Code, § 667, subd. (a)). At sentencing, the court struck the prior serious felony enhancements but declined to strike the strike priors. Appellant was sentenced to prison for 25 years to life.

On appeal, appellant contends his conviction must be reversed because the court erroneously admitted evidence of prior robberies appellant committed in order to prove identity and common scheme or plan. He contends the evidence regarding the uncharged robberies was not sufficiently similar to the charged attempted robbery to be admissible as proof of identity under Evidence Code section 1101, subdivision (b). He further argues that, as admitted to prove common scheme or plan, it was more prejudicial than probative and should have been excluded under Evidence Code section 352.

Appellant also contends the court erroneously applied a limit in awarding his presentence custody credits, which respondent concedes.

We modify the sentence to reflect the appropriate amount of presentence custody credits and affirm the judgment as modified.

## FACTS

On December 21, 2020, a man with dreadlocks wearing a hat, sunglasses, a light-colored striped shirt, and white tennis shoes entered a bank. He approached the teller desk, made small talk about the weather with the teller, and passed her a folded note. According to the teller, the note "said something to the effect of to give him 50s and 100s or—I can't remember if it was I'll hurt you or—it was something threatening though." The teller was "[t]errified." She froze and told the man she needed to call her supervisor over. While they were waiting for the supervisor, the man told the teller to hurry and asked for the note back. He told her if she did not give him the money, he would shoot her. He started counting and when he got as far as "three" or "four," he walked out. He did not obtain any money. Security camera footage from the bank depicting the attempted robbery was admitted and played for the jury.

2.

The teller testified she thought the dreadlocks were a wig because "[i]t just didn't look right." She observed that one of the dreadlocks was much longer than the others and reached the man's waist.

After law enforcement obtained the security footage from the bank, they released a photograph of the suspect on social media. Someone reported appellant's name to Crime Stoppers anonymously.

The investigating officer used appellant's photo to make a six-photo lineup to show the teller. The teller ruled out four of the individuals but could not rule out two, one of which was appellant. At trial, she identified appellant, as well as his photo, as the man at the bank. She also testified she identified him at the preliminary hearing.

The investigating officer also found a Facebook page attributed to appellant and observed a photo of shoes that looked like the same shoes worn by the attempted robbery perpetrator.

A search warrant was executed at appellant's residence, and the white shoes were found. No wig, hat, shirt, sunglasses, or any gold ring that matched the ones wore by the perpetrator were found.

Appellant was taken in for questioning. The interview was video recorded and played for the jury. During the interview, appellant denied involvement in the attempted robbery and asserted that the man in the security camera footage was not him. He admitted some of his acquaintances, including his fiancé, thought the photos of the attempted robbery suspect circulating on social media were of him, but he maintained the man was his "doppelganger." Appellant's person was searched and he had suspected methamphetamine and heroin on him.

Retired Modesto Police Department detective Alan Brocchini testified that in the course of investigating a robbery committed in August 2001, he was informed through Crime Stoppers that appellant was the perpetrator and had also committed other robberies in Stockton around that same time. A Stockton detective informed Brocchini that he was

3.

investigating three robberies that also took place in August 2001 and gave Brocchini details about the crimes. In all four robberies, the perpetrator had passed a note to the teller that said something to the effect of "[g]ive me your 100s and 50s" and "you won't get hurt" and wore a baseball cap and a white long-sleeved thermal.

Brocchini eventually arrested appellant and interviewed him. Appellant admitted he committed all four of the August 2001 robberies in order to pay a drug debt related to a crack cocaine addiction. Appellant said his drug dealer was the person who wrote the notes and drove him to the robberies. Appellant told Brocchini his notes always said the same thing, "[g]ive me your loose 100s and 50s, no 20s, nobody will get hurt" or something very similar to that. Appellant said he always wore a hat and similar clothes, and as soon as the robbery was over, he got rid of them. He explained that he never wore a mask because "everybody has a twin in this world, and so if you see him, how are you going to positively say.… How are you going to say it was me? I have a hat."

## DISCUSSION

### I. Admission of Evidence of Uncharged Bank Robberies

#### A. *Additional Background*

The People sought to admit evidence of appellant's statements regarding his prior bank robberies through Brocchini's testimony to establish his identity, and that he acted in accordance with a common scheme and plan under Evidence Code section 1101, subdivision (b). The defense sought to exclude this evidence pursuant to Evidence Code section 352.

The prosecutor argued the prior robberies were sufficiently similar to the charged crime to prove identity because appellant used "identical demand letters on each of the prior robberies, to wit, Give me all your 50s and 100s and no one gets hurt" and wore a hat or another hair covering to disguise himself like the "Rastafarian wig" in the charged attempted robbery. The prosecutor also argued that because the wig and hat were not

4.

located at appellant's residence during the search, it was also similar to the prior robberies where appellant disposed of the disguises immediately after.

Defense counsel argued the prior robberies were not probative as to identity because the teller identified appellant at the preliminary hearing, had the opportunity to identify him from the photo lineup, and there was surveillance footage of the incident. Defense counsel argued that one of the issues the jury would have to determine was whether the dreadlocks was a wig or the perpetrator's actual hair. She also argued the notes varied in small ways. She asserted the similarities were not strong enough to render the uncharged robbery evidence admissible. Counsel also argued evidence of the prior robberies was more prejudicial than probative.

The court concluded that "because there's a question as to identity, it appears that the priors would come in for the purposes of establishing identity." The court further concluded, "It is prejudicial. It is also probative. And I think it is also permissible under the Ewoldt[1] factor for the 1101(b) evidence."

Brocchini testified as summarized above.

The jury was instructed they could use the uncharged crime evidence for the limited purpose of determining identity, intent, motive, or plan or scheme, if they found the People proved appellant had committed the crimes by a preponderance of the evidence. They were instructed not to conclude from the evidence that appellant "has a bad character or is disposed to commit crime." They were further instructed it was only one factor to consider along with all the other evidence. (CALCRIM No. 375.)

## B.  *Relevant Law*

Trial courts have broad discretion in determining the admissibility of evidence, and we review challenges to the admission of evidence for abuse of discretion. (*People v. Jackson* (2016) 1 Cal.5th 269, 320–321.) Under this standard, the court's ruling " ' "will

---

**1**    *People v. Ewoldt* (1994) 7 Cal.4th 380 (*Ewoldt*).

not be disturbed, and reversal of the judgment is not required, unless the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." ' " (*People v. Lewis* (2009) 46 Cal.4th 1255, 1286.)

Evidence of prior misconduct is generally inadmissible to prove conduct on another specified occasion or to prove a person's disposition to commit such an act. (Evid. Code, § 1101, subd. (a).) Evidence Code section 1101, subdivision (b) is an exception to this general rule, providing that evidence of specific prior acts may be admitted, " ' " 'when offered as evidence of a defendant's motive, common scheme or plan, preparation, intent, knowledge, identity, or absence of mistake or accident in the charged crimes.' " ' " (*People v. Scully* (2021) 11 Cal.5th 542, 586.) Evidence admitted under Evidence Code section 1101, subdivision (b) is also subject to analysis under Evidence Code section 352. (§ 1101.)

"Evidence of uncharged crimes is admissible to prove identity, common plan, and intent 'only if the charged and uncharged crimes are sufficiently similar to support a rational inference' on these issues." (*People v. Edwards* (2013) 57 Cal.4th 658, 711.) "The greatest degree of similarity is required for evidence of uncharged misconduct to be relevant to prove identity. For identity to be established, the uncharged misconduct and the charged offense must share common features that are sufficiently distinctive so as to support the inference that the same person committed both acts. [Citation.] 'The pattern and characteristics of the crimes must be so unusual and distinctive as to be like a signature.' " (*People v. Ewoldt*, *supra*, 7 Cal.4th at p. 403.)

" 'The strength of the inference in any case depends upon two factors: (1) the *degree of distinctiveness* of individual shared marks, and (2) the *number* of minimally distinctive shared marks.' " (*People v. Edwards*, *supra*, 57 Cal.4th at p. 711.) " 'The inference of identity, however, "need not depend on one or more unique or nearly unique common features; features of substantial but lesser distinctiveness may yield a distinctive combination when considered together." ' " (*Ibid*.) "To be highly distinctive, the charged

6.

and uncharged crimes need not be mirror images of each other." (*People v. Carter* (2005) 36 Cal.4th 1114, 1148.)  Differences in highly distinctive crimes go to the weight of the evidence not its admissibility.  (*Ibid*.)

Appellant argues the uncharged acts were not sufficiently similar to the charged attempted robbery to be admissible to prove identity.  He argues that characteristics relied on by the People, like the note, wearing a hat or head covering, not being present at the bank when the police arrived, and disposing of the clothing after the robbery, do not rise to the level of being a distinctive "signature" and therefore do not meet the requirements articulated by our high court in *Ewoldt*.  To support his position, appellant cites several robbery cases where the facts include use of a note bearing similar language to the note used in the present case to illustrate the commonality of such a note.  He does the same for robbery perpetrators who wear hats, argues that fleeing the scene of the crime is "almost a universal characteristic of bank robbers," and reasonably proposes that the perpetrator's clothes not being found at appellant's residence points more to innocence than a similar characteristic tying the attempted robbery to appellant's past robberies.  We appreciate appellant's arguments but, in considering the totality of the circumstances in the present case, we find no abuse of discretion.

We conclude that in the present case the *combination* of the commonalities between appellant's past robberies and the attempted robbery, as well as the context he provided in his statement to Brocchini, meet the threshold for probative value as to identity.  Appellant told Brocchini that his notes "*always* said the same thing, Give me your loose 100s and 50s, no 20s, nobody will get hurt" or something similar.  (Italics added.)  He "*always*" wore a hat.  He had a specific and unique rationale for not wearing a mask or covering on his face, which was that "everybody has a twin."  These statements suggest appellant himself saw these characteristics as a type of "signature."  Particularly noteworthy is that the charged attempted robbery took place during the COVID-19 pandemic, making it exceptionally striking that the robber was not wearing a mask,

which appellant even commented on during his interview.[2] [3]  Paired with the evidence that appellant had admitted he made a point not to wear a mask because he felt everyone had a twin in this world, this constituted a highly distinctive characteristic.  The evidence of the prior robberies, including appellant's commentary on them, supported the inference that he was the person who committed the charged attempted robbery.  The evidence therefore was probative as to the issue of identity.

We also conclude the court did not abuse its discretion in determining the evidence was admissible under Evidence Code section 352.  "Evidence is not inadmissible under section 352 unless the probative value is 'substantially' outweighed by the probability of a 'substantial danger' of undue prejudice or other statutory counterweights.  Our high court has emphasized the word 'substantial' in section 352." (*People v. Holford* (2012) 203 Cal.App.4th 155, 167.)  Factors that may be considered include:  " '(1) the inflammatory nature of the uncharged conduct; (2) the possibility of confusion of issues; (3) remoteness in time of the uncharged offenses; and (4) the amount of time involved in introducing and refuting the evidence of uncharged offenses.' " (*People v. Culbert* (2013) 218 Cal.App.4th 184, 192.)  " ' "[E]vidence should be excluded as unduly prejudicial when it is of such nature as to inflame the emotions of the jury, motivating them to use the information, not to logically evaluate the point upon which it is relevant, but to reward or punish one side because of the jurors' emotional reaction.  In such a circumstance, the evidence is unduly prejudicial because of the substantial likelihood the jury will use it for an illegitimate purpose." ' " (*People v. Powell* (2018) 6 Cal.5th 136, 162–163.)

---

**2**    During his interview, appellant commented, "[t]his idiot don't know that it was COVID-19.  Son of a bitch could've worn a mask."

**3**    During her testimony, the teller was asked if it was odd to her that the perpetrator was wearing sunglasses, and she responded, in part, "it struck me more odd that we were all wearing masks and he didn't have a mask on."  This portion of her testimony was stricken because it was deemed nonresponsive to the question posed.

Here, as we have explained, the combination of circumstances of the prior robberies, including appellant's statements made in connection with those robberies, were probative as to appellant's identity, a highly disputed issue at trial. We cannot say it was substantially outweighed by the risk of undue prejudice.

As respondent points out, the prior robberies were not more inflammatory than the charged conduct. The evidence was introduced through the testimony of a single witness and did not consume a lot of time at trial. The focus of this testimony was not on extraneous or specific details of each robbery but rather what they all had in common, particularly drawn together by appellant's own statements.

Additionally, the evidence of the uncharged robberies was not the sole evidence relied on by the People to prove identity. The teller identified him in court and at the preliminary hearing and had narrowed down the photo lineup to appellant and one other person. The attempted robbery was captured on security camera footage and shown to the jury, and they could make their own comparisons between the footage and appellant in person as well as his mannerisms in the recorded interview. Shoes similar to those used by the attempted robber were found in appellant's residence. The jury could also evaluate the credibility of appellant's recorded interview. Though appellant denied involvement in the attempted robbery, he made somewhat incriminating statements, including that several acquaintances and his own partner thought the perpetrator was him based on the security camera footage. Finally, the jury was given a limiting instruction which directed them not to use the uncharged robbery evidence to conclude that appellant was of bad character or disposed to commit crimes. These factors would have substantially lessened any possibility that the jury would have relied on appellant's past robberies as improper propensity evidence.

Because we conclude the degree of similarity between the uncharged conduct and charged offenses was sufficient to justify admission of the uncharged conduct to establish identity, we necessarily conclude it was admissible to establish common scheme or plan,

which requires a lesser degree of similarity. Accordingly, we reject appellant's argument that he suffered undue prejudice in the form of the jury using the evidence to establish the improper purpose of identity. (See *People v. Jones* (2013) 57 Cal.4th 899, 930 [stating if evidence is admissible for the purpose of proving identity it was necessarily admissible to prove intent and motive, which require a lesser degree of distinctiveness].)

For these reasons, we find the court did not abuse its discretion in allowing the uncharged robbery evidence.

## II.  Conduct Credits

The court awarded 1,545 days of presentence custody credits, made up of 1,344 actual days and 201 days of conduct credit. The order appeared to be derived from the probation report, which indicated there was a 15 percent limitation on conduct credits pursuant to Penal Code section 2933.1.

Appellant contends the court erroneously applied the Penal Code section 2933.1 limitation, as it only applies to violent felonies, of which attempted robbery is not one. Respondent agrees, as do we.

Generally, a defendant is entitled to two days of conduct credit for every two actual days served in custody. (Pen. Code, § 4019.) Penal Code section 2933.1 places a 15 percent limit on conduct credits earned pursuant to Penal Code section 4019, if a defendant is convicted of a violent felony listed in Penal Code section 667.5, subdivision (c). Attempted robbery is not an enumerated violent felony under that subdivision. Appellant accordingly was entitled to 1,344 days of conduct credit. The judgment should be modified to reflect that he has earned an additional 1,143 days of conduct credit.

## DISPOSITION

The judgment is modified to reflect appellant has earned 1,344 days of conduct credits for a total of 2,688 days of presentence custody credits. The trial court is directed

to cause an amended abstract of judgment to be prepared and forwarded to the appropriate authorities.  As so modified, the judgment is affirmed.


DE SANTOS, J.

WE CONCUR:


DETJEN, Acting P. J.


PEÑA, J.

11.