Filed 3/1/22  P. v. Linthecome CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published,  except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E076892 |
| v. | (Super.Ct.No. 21PA-000271) |
| MARCUS LEON LINTHECOME, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Jay H. Robinson, Judge.  Affirmed with directions.

Kirstin M. Ault, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Michael Dolida, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant Marcus Leon Linthecome appeals from an order revoking his parole for criminally threatening his parole agent. Linthecome argues that the record does not contain substantial evidence supporting the trial court's finding that he violated Penal Code section 422 (undesignated statutory references are to this code). We disagree and affirm.

The People concede, and we agree, that there is a clerical error in the minute order. On the one hand, the minute order correctly states that the court found "insufficient evidence as to charge 1" but found Linthecome "has violated parole in charge 2." On the other hand, the same minute order states a disposition of "[c]onvicted" for charge 1 and a sentence of 180 days in jail on that charge, and no disposition on charge 2. We therefore direct the trial court to correct its minute order of March 18, 2021, to reflect the disposition that Linthecome was convicted and sentenced for charge 2 only.

BACKGROUND

On October 22, 2020, Linthecome was convicted of criminal threats in violation of section 422[1], sentenced to 16 months in prison, and released on parole that same day under the supervision of Parole Agent Gilbert Sosa. On February 24, 2021, Sosa filed a petition for revocation of Linthecome's parole, alleging two violations. Charge 1 alleged that Linthecome had violated special condition of parole No. 8, prohibiting contact with

---

[1] Although the parties' briefs state that defendant's conviction was for criminal threats in violation of section 422, there are conflicting statements in the record indicating that he pleaded guilty to a lesser included offense of attempted criminal threats in violation of section 664. Whether his conviction was for attempted or completed criminal threats is irrelevant for purposes of this appeal challenging the sufficiency of the evidence of his subsequent parole violation.

2

any minor under the age of 18. Charge 2 alleged that he had violated condition of parole No. 4, prohibiting him from engaging in any conduct prohibited by law, in that he violated section 422, subdivision (a), by threatening his parole officer.

At the parole revocation hearing, the trial court heard testimony from Sosa that he had been a parole agent for about four years, that he was assigned to a specialized unit of parole officers that monitored and supervised registered sex offenders, and that Linthecome had been under his supervision since October 22, 2020. Sosa testified that on February 17, 2021, he visited Linthecome at the hotel where he was residing, and hotel staff informed Sosa that Linthecome had been in contact with a minor. Because Linthecome's parole conditions prohibited any contact with minors other than his biological children, Sosa, accompanied by Agent Garcia and Unit Supervisor Kogeman, returned to the hotel the following morning, where they found Linthecome in his hotel room with a woman, T.S., and a 10-year-old girl. After learning that T.S. was not the girl's biological mother, Sosa arrested Linthecome and transported him to the High Desert Detention Center. En route, Linthecome called Sosa names. Upon exiting the car, while walking to the booking area, Linthecome told Sosa that he would challenge him in court, and Sosa responded, "'[T]hat's fine. I can meet you at the challenge in court.'" Linthecome then threatened Sosa, telling him "he's going to kick [his] ass," and saying, "'I'm going to fuck you up, and I fucked up a lot of cops.'" After entering the booking area, Linthecome continued to threaten Sosa, stating: "'I fucked up a lot of cops. I'm not scared of you. When I get out of jail we're going to handle it like men.'" Sosa was asked

3

to stand back while Linthecome was taken through a medical review but was again present with Linthecome during the property release procedure, and "that's when he told me that he's fucked up a lot of cops."[2]

When asked how he felt when Linthecome told him he was going to "kick [his] ass," Sosa testified, "I felt he had the opportunity to do so and that if he had an opportunity he could carry out those threats. I felt in fear for my safety." When asked why he felt in fear for his safety, Sosa responded, "He has a history of having aggression and, you know, his prior conduct on parole, I felt he had the means to carry out the threat."

Sosa testified that after Linthecome was booked into jail, he was able to make contact around 3:00 p.m. with the minor girl's biological mother, S.H., who sent him several photographs showing Linthecome with what appeared to be her 10-year-old daughter.

Linthecome called Deputy Michael Bain of the San Bernardino County Sheriff's Department, who testified that he was assigned to male intake at High Desert Detention Center on February 18, 2021, when Linthecome was booked. Bain testified that during the intake process, Linthecome was "expressing himself out loud, was unhappy" and that "he was upset that he was there and why he was there." Bain could hear the conversations between Linthecome and the parole officers discussing "previous stuff that

---

[2] It is unclear from Sosa's testimony if Linthecome repeated this last statement multiple times during the incident or said it only once (and Sosa was clarifying the time at which it was said).

4

happened outside of the facility" and "other interactions he'd had with police officers" but did not hear Linthecome make any direct threats. Bain testified that he was not outside the intake area and would not have been able to hear any statements Linthecome had made outside the doors before being brought inside.

Linthecome also testified in his own defense but limited his testimony to issues related to the charge of improper contact with a minor and did not address the criminal threats charge. He stated that the minor girl in his hotel room was his biological daughter and that he provided the parole officers with the girl's biological mother's telephone number to verify the girl's relationship. Linthecome testified that the parole agents had called the girl's mother immediately to verify that the girl was his daughter, that Sosa had lied when he testified that his first contact with the girl's mother was not until 3:00 p.m. that afternoon, that Sosa had "exploited" the information provided about his daughter, and that Sosa was "corrupt" and "malicious."

The court found insufficient evidence to support charge 1 but found charge 2 true. Linthecome was sentenced to 180 days in county jail pursuant to section 3056.

DISCUSSION

Linthecome argues the trial court's finding that he violated the terms of his parole by making criminal threats in violation of section 422 is not supported by substantial evidence. We disagree.

5

A.       *Mootness*

Before addressing the sufficiency of the evidence, we address the People's request that the appeal be dismissed as moot because Linthecome has already completed his 180-day jail sentence.  "An appeal may be dismissed as moot when, pending the appeal and through no fault of the appellant, an event occurs that renders it impossible for the reviewing court to grant the appellant any effective relief for the claims raised on appeal."  (*People v. Schaffer* (2020) 53 Cal.App.5th 500, 506.)  It is not disputed that Linthecome has completed his 180-day sentence of incarceration for the parole violation under appeal, so a reversal cannot provide any effective relief from that sentence.  However, subdivision (b)(6) of section 3000 provides that in calculating the term of parole, "[t]ime during which parole is suspended because the prisoner . . . has been returned to custody as a parole violator shall not be credited toward any period of parole unless the prisoner is found not guilty of the parole violation."  (§ 3000, subd. (b)(6); see § 1203.2, subd. (a) [revocation of supervision "shall serve to toll the running of the period of supervision"].)  Accordingly, Linthecome's parole term, originally set to expire February 27, 2022, will be extended for the period of his incarceration for the parole violation, unless the trial court's finding of a parole violation is reversed.  Because this extension of the original term of parole would be reversed if this appeal is successful, the appeal is not moot.

6

B.    *Standard of Review*

Section 1203.1 "confer[s] great flexibility upon judges making" a determination to revoke parole or probation and requires only that a violation of any of the terms of supervision be proved by a preponderance of the evidence.  (*People v. Rodriguez* (1990) 51 Cal.3d 437, 443.)  In considering a challenge to the sufficiency of the evidence, "we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty . . . .  [Citation.]  We presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence.  [Citation.]" (*People v. Albillar* (2010) 51 Cal.4th 47, 59-60.)

C.    *Substantial Evidence Supports the Trial Court's Findings on the Criminal Threat Elements of Sustained Fear, Objectively Reasonable Fear, and Gravity of Purpose*

To prove a criminal threat in violation of section 422, the prosecution must prove five elements:  (1) the defendant willfully threatened to commit a crime that will result in death or great bodily injury to another person, (2) the defendant made the threat with the specific intent that the statement be taken as a threat, even if there is no intent to carry it out, (3) the threat was, on its face and under the circumstances in which it was made, so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat,

7

(4) the threat actually caused the person threatened to be in sustained fear for his or her own safety or for his or her immediate family's safety, and (5) the threatened person's fear was reasonable under the circumstances. (*In re George T.* (2004) 33 Cal.4th 620, 630 (*George T.*).)

"[S]ection 422 requires that the communication must be sufficient 'on its face and under the circumstances in which it is made' to constitute a criminal threat. This means that the communication and the surrounding circumstances are to be considered together. 'Thus, it is the circumstances under which the threat is made that give meaning to the actual words used. Even an ambiguous statement may be a basis for a violation of section 422.' [Citations.]" (*In re Ryan D.* (2002) 100 Cal.App.4th 854, 860.)

Linthecome first argues that the People failed to present substantial evidence that Linthecome's statements caused Sosa to be in sustained fear for his safety and that his fear was objectively reasonable under the circumstances. When asked how he felt when Linthecome threatened to "kick [his] ass," Sosa testified that he felt in fear for his safety, but as Linthecome correctly points out, Sosa did not testify that his fear was sustained for any particular length of time.

"[A] victim can experience sustained fear even if the fear exists only during the incident itself, as long as the fear during the incident is more than 'momentary, fleeting, or transitory.'" (*People v. Brugman* (2021) 62 Cal.App.5th 608, 634 (*Brugman*).) Sustained fear is fear that is not "'instantly over.'" (*People v. Culbert* (2013) 218 Cal.App.4th 184, 191.)

8

Here, the absence of testimony as to the precise duration of Sosa's fear does not demonstrate a lack of substantial evidence to support that element of the offense. Because on review we "'must accept logical inferences that the [finder of fact] might have drawn from the circumstantial evidence'" (*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573), we find that substantial evidence supported an inference that Sosa's fear was more than merely momentary, fleeting, or transitory.

Sosa testified that Linthecome began calling him names while they were driving to the jail, and as they were walking from the car to the intake area, Linthecome told Sosa he would challenge the arrest in court. When Sosa responded, "'I can meet you at the challenge in court,'" Linthecome started threatening Sosa, telling him he was going to "kick [his] ass" and "'fuck [him] up.'" Linthecome's threats continued after they entered the jail's booking area, when he told Sosa "'I'm not scared of you. When I get out of jail we're going to handle it like men.'" At some point during the intake process, Sosa was directed to stand back while Linthecome underwent medical review, but that separation was apparently not sufficient for Linthecome to regain control of his temper, because later, as he was turning in his property, he boasted to Sosa "that he's fucked up a lot of cops." Both Sosa and Bain testified in some detail about the jail's intake process, which included procedures for booking, searching, fingerprinting, photographing, completing paperwork, medical review, and property release; it is reasonable to infer that Linthecome's threats—which had begun before they entered the intake area—continued or were repeated over a period of time sufficient to induce sustained fear. Here, even in

9

the absence of specific testimony on the precise duration of the victim's fear, the element of sustained fear can be inferred from the circumstances. (See, e.g., *Brugman*, *supra*, 62 Cal.App.5th at p. 634.) In addition, Linthecome's statement that "'[w]hen I get out of jail we're going to handle it like men'" is reasonably understood as a threat of violence in the near future, precisely the sort of threat that is intended to elicit apprehension of a sustained duration. From this evidence, the court could reasonably have inferred that Sosa's fear for his safety was sustained beyond that which is "'momentary, fleeting or transitory.'" (*Brugman*, at p. 634.)

Linthecome next argues that because Sosa was a trained parole officer and the threats were made while Linthecome "was handcuffed, in a secure location, and surrounded by multiple law enforcement officers," Sosa's fear could not have been objectively reasonable under the circumstances. We disagree. "Section 422 requires only that the words used be of an immediately threatening nature and convey 'an immediate *prospect* of execution' . . . . It does not require the showing of an immediate ability to carry out the stated threat." (*In re David L.* (1991) 234 Cal.App.3d 1655, 1660 (*David L.*).) Accordingly, threatening statements made while the defendant is in custody, is in the presence of law enforcement, or is otherwise prevented from immediately acting on the threat have been held to violate section 422. In *People v. Wilson* (2010) 186 Cal.App.4th 789 (*Wilson*), the defendant threatened a trained corrections officer while housed in a maximum security area of a state prison, when the defendant was handcuffed and flanked by two officers with batons. (*Id*. at pp. 797-798.) The threats were found to

10

violate section 422 even though "there was no evidence that defendant . . . had the apparent means to carry out the threat at that exact moment." (*Id*. at p. 814.) The court concluded that the "defendant's conviction is supported by substantial evidence because he unequivocally told [the officer] that he would carry out that threat when he was released from custody." (*Ibid*.) "Defendant effectively made an appointment to kill [the officer] at his earliest possible opportunity—he would perform the act the instant he was set free." (*Ibid*.) "Defendant's threat caused [the officer] to reasonably be in sustained fear for his life . . . ." (*Ibid*.)

Similarly, in *People v. Gaut* (2002) 95 Cal.App.4th 1425 (*Gaut*), the court found substantial evidence to support a conviction for violating section 422 even though the defendant's threats to kill the victim were made by phone from jail, so he could not immediately carry them out. (*Id*. at p. 1432.) The victim knew of the defendant's history of previous threats, the defendant had bragged to the victim that he had pistol-whipped his previous girlfriend, and it "was reasonable for [the victim] to fear that defendant would also follow through on the threats he made from jail based on the totality of the circumstances." (*Id*. at p. 1431; see, e.g., *People v. Franz* (2001) 88 Cal.App.4th 1426, 1449; *People v. Smith* (2009) 178 Cal.App.4th 475, 479-481 [victim's fear was objectively reasonable notwithstanding victim was in California and threats were made by phone while defendant was in Texas and lacked any job, income, or means of immediately travelling to California to carry out threats].)

11

In the present case, as in *Wilson* and *Gaut*, Linthecome's threats included both boasts of prior acts of violence against others and threats to commit violence against the victim upon his release. Even though Linthecome was handcuffed and in custody when he made those threats and had no immediate means to execute them, Sosa construed them as threats to inflict violence upon Linthecome's release: "I felt . . . that if he had an opportunity he could carry out these threats."

Moreover, Sosa testified that he feared for his safety because Linthecome "has a history of having aggression and, you know, his prior conduct on parole, I felt that he had the means to carry out the threat." Given that Sosa had been Linthecome's parole officer for four months, he was certainly familiar with Linthecome's prior criminal history, including that Linthecome's current parole resulted from a criminal threats conviction. In addition, Linthecome boasted that "he's fucked up a lot of cops." Those circumstances provide ample support for the trial court's finding that Linthecome's threats reasonably caused Sosa sustained fear for his safety. (See, e.g., *People v. Allen* (1995) 33 Cal.App.4th 1149, 1156 ["The victim's knowledge of defendant's prior conduct is relevant in establishing that the victim was in a state of sustained fear."]; *Gaut*, *supra*, 95 Cal.App.4th at pp. 1431-1432 [victim's sustained fear was reasonable where she had knowledge of defendant's prior threats and defendant boasted of previous violence].)

Linthecome similarly argues that the record does not contain substantial evidence to support element three, which requires that a threat convey a gravity of purpose and an immediate prospect of execution of the threat, because (1) Linthecome's statements were

12

made while he was in custody, handcuffed, and surrounded by law enforcement officers; (2) his words were not accompanied by any physical show of force or attempt to harm Sosa; (3) no evidence suggested Linthecome had the means to carry out the threat from jail by obtaining a weapon or by contacting accomplices outside; and (4) nothing in the record indicated that Sosa or the other officers present did anything in response to Linthecome's statements to indicate they feared he would actually carry out the threats. Linthecome attempts to distinguish the other cases that have affirmed convictions under section 422 based on threats made while in custody, arguing that in each case, the defendant either had a demonstrated ability to obtain a weapon while in custody to carry out the threat or had threatened to use gang connections or other accomplices outside of custody. (See, e.g., *People v. Mosley* (2007) 155 Cal.App.4th 313, 323-324; *Gaut*, *supra*, 95 Cal.App.4th at pp. 1431-1432.) Linthecome urges us not to follow *Wilson*, *supra*, 186 Cal.App.4th 789, arguing that it is the only case finding a threat while in custody violated section 422 absent the defendant's ability to carry out the threat either by obtaining a weapon while in custody or by calling on associates outside of prison to execute the threat. Linthecome argues that by affirming a section 422 conviction based on a prisoner's statements that he would find a corrections officer and """blast""" him after being released in 10 months, the *Wilson* court essentially erased the statutory requirement of immediacy. We disagree.

Regarding the third element, "'unequivocality, unconditionality, immediacy and specificity are not absolutely mandated, but must be sufficiently present in the threat and

13

surrounding circumstances to convey gravity of purpose and immediate prospect of execution to the victim.'" (*People v. Bolin* (1998) 18 Cal.4th 297, 340 (*Bolin*).) "'The four qualities are simply the factors to be considered in determining whether a threat, considered together with its surrounding circumstances, conveys those impressions to the victim.'" (*George T.*, *supra*, 33 Cal.4th at p. 635.)

As the court explained in *Ayala v. Superior Court* (2021) 67 Cal.App.5th 296, "section 422 is not necessarily directed at a violator's intended infliction of death or physical harm on another person. Indeed, the statute, on its face, does *not* require that the violator intend to cause death or great bodily injury to the victim. Instead, section 422 is focused on an altogether different type of harm—mental distress. '"*While the statute does not require that the violator intend to cause death or serious bodily injury to the victim, not all serious injuries are suffered to the body. The knowing infliction of mental terror is equally deserving of moral condemnation.*"'" (*Id.* at p. 304, quoting *People v. Solis* (2001) 90 Cal.App.4th 1002, 1024.) Accordingly, courts interpreting the third element, the requirement that the threat convey to the person threatened a gravity of purpose and an immediate prospect of execution, have focused on the effect of the threat on the listener, rather than requiring an immediate ability to carry out the threat at the time it is uttered. (See, e.g., *People v. Butler* (2000) 85 Cal.App.4th 745, 754-755 (*Butler*); *David L.*, *supra*, 234 Cal.App.3d at p. 1660.) Thus, the word "immediate" as used in section 422 means "that degree of seriousness and imminence which is

14

understood by the victim to be attached to the *future prospect* of the threat being carried out." (*People v. Melhado* (1998) 60 Cal.App.4th 1529, 1538.)

Considered in light of the totality of the evidence presented here, Linthecome's threats to Sosa are reasonably understood to carry sufficient gravity of purpose, seriousness, imminence, and immediacy of the prospect of future execution to satisfy the third element of the statute. The threats began after Linthecome said he would challenge his arrest and Sosa responded that he would meet defendant's challenge in court at the parole revocation hearing, which was held less than one month later. Linthecome's threats included the statement, "'When I get out of jail we're going to handle it like men,'" which conveyed an intent to execute the threat upon Linthecome's release. Sosa knew that the maximum penalty for a parole violation is 180 days in county jail and that Linthecome would be released much sooner if he prevailed on his challenge. (§ 3000.08, subd. (g).) Given his knowledge of defendant's history of aggression, prior criminal record, and conduct while on parole, Sosa believed "if he had an opportunity he could carry out those threats," and he knew that Linthecome would have such an opportunity within, at most, six months.

We need not go so far as the *Wilson* court in concluding that the "'immediate prospect of execution'" element was not "intended to place a limited timeline on when a specific and unconditional threat would be executed." (*Wilson*, *supra*, 186 Cal.App.4th at p. 816.) Here, Linthecome's incarceration would make him unable to carry out his

threats for, at most, six months, and it does not follow that his threats lacked a sufficient gravity of purpose and immediate prospect of execution.

D. *Statements Were Sufficiently Specific to Constitute Criminal Threats*

Linthecome next argues that his statements were merely an "angry rant" or "emotional outburst" and were too vague and ambiguous to constitute true threats in violation of section 422. He contends that the statements themselves were merely "vague expressions of his discontent" made in the course of an arrest for a parole violation the trial court ultimately concluded was unproven. Pointing to Bain's testimony that Linthecome was upset and unhappy and was "expressing himself out loud," Linthecome argues his statements to Sosa are equivalent to those made in *In re Ricky T*. (2001) 87 Cal.App.4th 1132, which the court concluded were merely "an emotional response to an accident rather than a death threat that induced sustained fear." (*Id*. at p. 1141.) There, the court found the defendant's "remark 'I'm going to get you' is ambiguous on its face and no more than a vague threat of retaliation without prospect of execution," and that there was no evidence regarding the statement's context, the parties' relationship, or subsequent actions that would transform the facially ambiguous statement into a criminal threat. (*Id*. at pp. 1135, 1138-1139.)

We do not agree that Linthecome's statements were so vague and ambiguous that they cannot reasonably be viewed as true threats. "A threat is sufficiently specific where it threatens death or great bodily injury. A threat is not insufficient simply because it does 'not communicate a time or precise manner of execution, section 422 does not

16

require those details to be expressed.' [Citation.]" (*Butler*, *supra*, 85 Cal.App.4th at p. 752.) Taken together, Linthecome's statements—"'I'm going to kick your ass'"; "'I'm going to fuck you up, and I fucked up a lot of cops'"; "'When I get out of jail we're going to handle it like men'"—are unequivocal, unconditional, and specific and clearly evince an intent to convey a threat of bodily harm.

Even were we to agree with Linthecome that the statements here were facially ambiguous, "punishable threats can be nonspecific and ambiguous so long as they reasonably may be construed, under the circumstances, as threatening death or great bodily injury." (*Butler*, *supra*, 85 Cal.App.4th at p. 759.) As discussed above, Sosa had knowledge of Linthecome's previous criminal history, including the criminal threat felony conviction that had placed Linthecome under Sosa's supervision just four months earlier, and Sosa testified that Linthecome's history of aggression contributed to his fear that Linthecome would carry out his threats if given the opportunity to do so. Perhaps a trial court might reasonably have interpreted the evidence as Linthecome urges and concluded that the statements here amounted to nothing more than vague, ambiguous, and crude expressions of anger uttered in the heat of the moment, but under the deferential standard of review applicable here, we cannot conclude that "'upon no hypothesis whatever is there sufficient substantial evidence to support'" the trial court's contrary determination. (*Bolin*, *supra*, 18 Cal.4th at p. 331; see *People v. Stanley* (1995) 10 Cal.4th 764, 793 ["""If the circumstances reasonably justify the trier of fact's findings,

17

the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment.'"'"].)

E.      *Agent Sosa's Testimony Was Not Contradicted by that of Deputy Bain and Was Not Inherently Improbable*

Linthecome's final argument is that Sosa's testimony was so internally inconsistent and contradicted by Bain that it does not provide substantial evidence to support the trial court's finding of a parole violation.  Relying on *People v. Reyes* (1974) 12 Cal.3d 486 (*Reyes*), Linthecome argues we must reject Sosa's testimony as "inherently insubstantial" and establishing only "inconsistent inferences sought to be derived from weak and inconclusive sources." (*Id*. at p. 499.)  This argument misconstrues both the evidence adduced in the trial court and our role in reviewing it.

In reviewing a conviction for substantial evidence, "'[w]e do not reweigh evidence or reevaluate a witness's credibility.'  [Citations.]  'Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact.  [Citation.] Moreover, unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction.'  [Citations.]" (*People v. Brown* (2014) 59 Cal.4th 86, 106.)

We do not agree that Sosa's testimony was necessarily contradicted by that of Bain, who did not hear Linthecome make any direct threats against Sosa.  Sosa testified that Linthecome's first threats (telling Sosa "he's going to kick [his] ass" and saying, "'I'm going to fuck you up, and I fucked up a lot of cops'") were made outside the

18

entrance to the jail's intake area, and Bain testified that he was inside the booking area and would not have been able to hear anything said outside. Sosa testified that he was asked to stay back while Linthecome underwent a medical review, and after that review was completed he was once again in Linthecome's presence during property release and "that's when he told me that he's fucked up a lot of cops." While it is unclear from this testimony whether Linthecome repeated that statement after initially having said it outside the booking area or whether Sosa was clarifying his earlier testimony as to when and where the statement was made, that does not render the testimony internally inconsistent or inherently improbable. Nor is it necessarily contradicted by Bain's failure to hear any threats; as Bain testified, he is usually right next to an inmate during "most" of the booking process, such as searching, fingerprinting, and photographing, but he also acknowledged attending to other duties while Linthecome was placed in a holding cell. We do not view Sosa's and Bain's testimony as inherently in conflict.

Nor can Sosa's testimony be compared with the weak, inconsistent, and equivocal eyewitness identification found to constitute insubstantial evidence in *Reyes*. Sosa's testimony concerned statements made directly to him by Linthecome, and he expressed no doubt, hesitation, or equivocation as to the substance of the threats or the sustained fear for his safety they elicited. Linthecome's argument essentially invites us to substitute our judgment regarding Sosa's credibility for that of the trial court, which had the opportunity to observe the demeanor of all the witnesses, including Linthecome. This we cannot do.

19

We find substantial evidence supports the finding that Linthecome violated his parole by making criminal threats prohibited by section 422.

DISPOSITION

The trial court's order is affirmed with directions to correct the minute order to indicate that defendant was convicted and sentenced on charge 2, not charge 1.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ

J.

We concur:

RAMIREZ

P. J.

MILLER

J.