Filed 4/14/22  P. v. Wilson CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>KEVIN LYNN WILSON,<br><br>    Defendant and Appellant. | F081022<br><br>(Super. Ct. No. LF012723A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Charles Brehmer, Judge.

Eric E. Reynolds, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Lewis A. Martinez and Amanda D. Cary, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Appellant Kevin Lynn Wilson was convicted by jury of making criminal threats (Pen. Code,[1] § 422; count 2) and obstructing law enforcement by threat (§ 69; count 3).

---

[1]    All further undesignated statutory references are to the Penal Code.

The court sentenced appellant to the middle term of two years as to count 2 and the upper term of three years as to count 3, to be served concurrently. On appeal, appellant contends (1) his conviction on count 2 must be reversed because it was supported by insufficient evidence; (2) alternatively, his sentence for count 2 must be stayed because it was executed in violation of the prohibition against multiple punishment (§ 654); and (3) the court erred by imposing certain fines and fees without making a determination that appellant had the ability to pay them. We modify the judgment to reflect the sentence on count 2 is stayed. In all other respects, we affirm the judgment as modified.

## FACTS

On November 20, 2019, the Kern County Sheriff's Office received reports of a single gunshot coming from appellant's residence. Kern County Deputy Sheriff Mathew Alvarez reported in uniform to appellant's residence at approximately 9:00 p.m. The residence was situated on a hillside, and the porch area was on the second story of the house, with a staircase leading up to it. The porch area was approximately 10 to 15 square feet in size.

Alvarez went up the stairs to approach the residence and could see clearly through a window into the front of the house. Alvarez knocked on the door and announced loudly he was from the sheriff's office a couple of times. Through the window, Alvarez saw appellant coming down the hallway toward the front door "walking with a purpose" "aggressively" with a long gun in his left hand. Alvarez thought he was going to get shot; he took a step back to move out of the way of the door and removed his firearm from his holster. Alvarez pointed his firearm toward the door and shouted, "sheriff's office, put the gun down" approximately three times. Alvarez saw the door open but could not see appellant from where he had moved to. Alvarez continued to repeat "[i]t's the sheriff's office" and told appellant to put the gun down. Appellant responded, "F[...] you, put yours down first." Alvarez continued to tell appellant to put the gun down, and appellant stated, in what Alvarez described as a sarcastic tone, "Come on inside and we'll

talk about it" and then shut the door. Alvarez testified he felt "at a complete tactical disadvantage" because appellant knew the layout of the house and Alvarez did not.

Alvarez decided to take cover behind a pickup truck parked across the street. On his way there, he put out on his radio that appellant was armed so that more units would arrive. While Alvarez was behind the pickup, appellant came outside to the porch area with what Alvarez believed to be the same firearm in his right hand and appeared to be looking for Alvarez. Appellant yelled out, "[w]here are you at, motherf[…]er? Kill me. I want to die." Alvarez did not respond, as he did not want to give up his location. After about 30 to 45 seconds, appellant went back inside, shutting the door behind him. Alvarez went back to his patrol car and drove to the post office about an eighth of a mile away to wait for the other deputies to decide how to reapproach the residence.

Other deputies began to arrive at the post office, and during that time, approximately 40 minutes after Alvarez had arrived on scene, Alvarez saw the pickup he took cover behind coming down a nearby road being driven by appellant. Alvarez alerted the other deputies to this fact. Deputy Sheriff Amanda Plugge subsequently pursued appellant and attempted to conduct a traffic stop. Appellant stopped the pickup in response. Plugge drew her duty weapon and pointed it toward appellant and ordered him to put his hands outside the vehicle, and he did so. Appellant then began to put one of his hands back inside the vehicle, and Plugge again ordered him to put his hands out the window, and he again complied by putting his hands as well as the upper portion of his torso out of the window. Additional units arrived and started to accumulate behind Plugge. Appellant then got back into his vehicle, and started driving away, and Plugge and Senior Deputy Jason Nelson pursued him.

Appellant drove back to his residence. He began to run toward the entrance, and Plugge and Nelson repeatedly yelled at him to stop. The deputies did not follow appellant for their safety due to Alvarez's report that appellant had a firearm. Appellant went inside the residence, and Plugge and Nelson ordered him to come out. Appellant

3.

did not initially comply but eventually returned to the porch with a beer in his hand and asked the deputies why they were chasing him. Deputies then ordered appellant numerous times to come down the stairs, informed him he was under arrest, and gave him the reason why. Appellant refused and made statements that he was looking for a gun on his porch. At one point, appellant told the deputies he was going to shoot them all.

The deputies began telling appellant they did not want anyone to get hurt, and appellant then shouted that he wanted the deputies to kill him. This standoff lasted about three hours, with appellant on his porch refusing to come down. Throughout the standoff, appellant had several mood swings; he vacillated between laughing and bantering with the deputies and becoming angry.

Plugge explained at trial they did not approach appellant because there had been a report of a shot fired, Alvarez had observed appellant with a firearm, and appellant was looking for a gun he stated was on the porch. Plugge testified she was afraid for her and appellant's safety and this was based on her fear that "at any time, he could have gone inside and come back out with a firearm." Nelson testified he was afraid for his safety due to Alvarez's report he had been confronted with a firearm and Nelson and the other deputies involved in the standoff were not aware whether appellant was armed or whether a firearm was easily accessible. Nelson testified "[i]t was safer for us to maintain a position of advantage for us instead of going into an area he knows where we would have been put in danger of being shot or hurt otherwise." Nelson testified his fear lasted the entire three hours of the standoff.

Eventually, SWAT responded to the residence and subdued appellant with a rubber sponge round. Appellant was then taken into custody. A search of appellant's person revealed he had no weapons on him except for a pocketknife. After appellant was detained, Nelson executed a search warrant on appellant's residence and recovered a rifle from the front yard.

4.

Appellant testified in his defense. He admitted the standoff occurred and explained he was not resisting arrest. He did not comply with the deputies' orders to come down the stairs because he did not feel comfortable due to it being dark, and he was afraid of being hurt by a K-9 officer on the scene. He admitted to telling the deputies, out of frustration, to shoot him but denied threatening to shoot the deputies.

## DISCUSSION

### I.  Sufficiency of the Evidence—Criminal Threats (Count 2)

In assessing a claim of insufficiency of the evidence, we review "the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible and of solid value— from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Snow* (2003) 30 Cal.4th 43, 66.) Reversal on insufficiency of the evidence is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction]." (*People v. Redmond* (1969) 71 Cal.2d 745, 755.)

Generally, the elements of making a criminal threat are: (1) that the defendant willfully threatened to commit a crime which would result in death or great bodily injury to another person; (2) verbally in a manner "so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat"; (3) with the specific intent the statement be taken as a threat; (4) that the threat actually caused the person threatened "to be in sustained fear for his or her own safety or for his or her immediate family's safety"; and (5) that the threatened person's fear was reasonable under the circumstances. (§ 422, subd. (a); *In re George T.* (2004) 33 Cal.4th 620, 630.) The sustained fear element of the offense "is satisfied where there is evidence that the victim's fear is more than fleeting, momentary or transitory." (*People v. Culbert* (2013) 218 Cal.App.4th 184, 190.)

Appellant's contention deals specifically with the fourth element. He contends no substantial evidence was presented to support the jury's finding appellant's threat to shoot the deputies actually caused the deputies to experience sustained fear because Plugge and Nelson testified they were in fear during the entirety of the encounter, as a result of "the circumstances of the encounter." Thus, according to appellant, because the deputies testified they experienced fear before appellant threatened to shoot them, not specifically as a direct cause of the threat, his conviction cannot stand. Appellant's contention is without merit.

In California, the prosecution has met its burden to show criminal causation if it "produces evidence from which it may be reasonably inferred that appellant's act was a substantial factor" in the injury, or as in the present case, fear. (*People v. Scola* (1976) 56 Cal.App.3d 723, 726; see *People v. Caldwell* (1984) 36 Cal.3d 210, 220 [citing *Scola* with approval]; see also 1 Witkin, Cal. Criminal Law (4th ed. 2021) Elements, § 37.) A factor is substantial when it is more " 'than [an] insignificant or merely theoretical' " cause of the victim's injury, or as here, the victim's fear. (*People v. Jennings* (2010) 50 Cal.4th 616, 643.) Section 422 contains no requirement that the threat be the only source of the victim's fear, and courts have held juries can properly consider a defendant's actions before and after a threat to determine whether he or she caused the victim to experience sustained fear. (See *People v. Allen* (1995) 33 Cal.App.4th 1149, 1156 ["[t]he victim's knowledge of defendant's prior conduct is relevant in establishing that the victim was in a state of sustained fear"]; see also *People v. Solis* (2001) 90 Cal.App.4th 1002, 1011–1014 [holding that the jury could properly consider a later action taken by a defendant in evaluating whether the crime of making a terrorist threat has been committed].)

Applying the above principles, we conclude that substantial evidence supports the jury's finding that appellant's threat to shoot the deputies contributed as at least a substantial factor to the deputies' fear. The deputies testified they feared for their safety

based on several factors:  the initial call being for a gunshot, Alvarez's initial observation that appellant had a gun, that appellant enjoyed somewhat of a tactical advantage from his porch, and it was unclear whether appellant was armed or had easy access to a gun from his position.  The deputies' generalized fear, simply paraphrased, was that appellant might shoot them.  This initial fear was reasonable and based on appellant's own conduct.  Against this backdrop, the jury could reasonably infer appellant's express threat to do the very thing the deputies feared substantially heightened whatever fear they were already experiencing at the outset of their encounter with appellant, and therefore that threat contributed to their fear in more than an insignificant or theoretical way.  Accordingly, the jury could ultimately conclude appellant's threat actually caused the deputies to experience sustained fear as required by the statute.  We do not find, and appellant cites no supporting authority, that the fact the deputies feared for their safety before appellant made the threat precludes a finding appellant's threat contributed as a substantial factor to their fear.

We find no error.

## II.     Violation of Section 654

Section 654 bars the imposition of multiple sentences for a single act or omission even when the act or omission may violate more than one criminal provision.  (§ 654; *People v. Dowdell* (2014) 227 Cal.App.4th 1388, 1413.)  Section 654 applies to concurrent sentences, as well as consecutive sentences.  (*Dowdell*, at p. 1413.)

Appellant contends he was improperly sentenced on both counts 2 and 3 under section 654 because the convictions were based on the same act.  Respondent concedes the sentence for count 2 must be stayed.  We accept respondent's concession without further analysis and stay the sentence on count 2.

## III.    Fines and Fees

Appellant was ordered to pay an $80 court security fee (§ 1465.8), a $60 court facilities fee (Gov. Code, § 70373), a $300 restitution fine (§ 1202.4, subd. (b)), and a

$300 parole revocation fine (§ 1202.45), which was stayed pending successful completion of parole. At sentencing, appellant did not object to the fines or fees or make any representation he did not have the ability to pay them.

On appeal, appellant contends the court erred by ordering the court security fee and court facilities fee without conducting a hearing and finding appellant had the ability to pay under *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*). Appellant further contends the imposition of the $300 restitution fine and corresponding parole revocation fine, as well as the other fees, violated the Eighth Amendment prohibition against excessive fines because the court did not make a determination regarding appellant's ability to pay. Appellant contends if we find forfeiture based on his failure to object, his counsel provided ineffective assistance.

We find appellant has forfeited both his claims as he did not object either under the *Dueñas* decision, which was issued more than 14 months before appellant's sentencing, or the excessive fines clause. As such, we turn to appellant's ineffective assistance of counsel claim.

To prevail on an ineffective assistance of counsel claim, appellant must establish that (1) the performance of his trial counsel fell below an objective standard of reasonableness and (2) prejudice occurred as a result. (*Strickland v. Washington* (1984) 466 U.S. 668, 687; *People v. Anderson* (2001) 25 Cal.4th 543, 569.) "When examining an ineffective assistance claim, a reviewing court defers to counsel's reasonable tactical decisions, and there is a presumption counsel acted within the wide range of reasonable professional assistance. It is particularly difficult to prevail on an *appellate* claim of ineffective assistance. On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation. All other claims

8.

of ineffective assistance are more appropriately resolved in a habeas corpus proceeding." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.)

Appellant cannot demonstrate ineffective assistance of counsel for failing to object to the fines and fees based on appellant's inability to pay them. On the issue of whether defense counsel should have requested an ability-to-pay hearing pursuant to *Dueñas*, because appellant makes his claim on direct appeal, he is unable to show any evidence defense counsel should have presented at any ability-to-pay hearing beyond what was on the record. The record before us belies any claim appellant had no ability to pay the fees. The probation report indicates appellant was employed up to his arrest and made $20 per hour for an income of $3,800 per month, which well exceeded his expenses comprising of $500 for rent, $400 for food, and $150 for his phone. As for assets, he owned four trucks, one of which was valued at $7,000 and another at $8,000. Appellant was sentenced to three years in prison, and there is no apparent reason on the record that he would not be able to pay the fines and fees at the latest shortly after his release based on his assets and work history.

Similarly, appellant cannot demonstrate prejudice resulting from defense counsel's failure to object to the amount of the fines and fees under the excessive fines clause. Counsel's failure to make a futile or unmeritorious objection is not deficient performance. (*People v. Price* (1991) 1 Cal.4th 324, 387.) A fine is excessive under the Eighth Amendment "if it is grossly disproportional to the gravity of a defendant's offense." (*United States v. Bajakajian* (1998) 524 U.S. 321, 334.) In addition to there being no evidence on the record that appellant had no ability to pay the fines and fees, the record simply does not show the fines and fees imposed here were grossly disproportionate to appellant's offense. We find instructive that section 1202.4, subdivision (b) expressly sets forth the amount of the restitution fine is within the discretion of the court and shall be "commensurate with the seriousness of the offense" so long as it is not less than $300 or greater than $10,000. (§ 1202.4, subd. (b)(1).)

According to the statute, the court may determine the amount of the fine as "the product of the minimum fine … multiplied by the number of years of imprisonment the defendant is ordered to serve, multiplied by the number of felony counts of which the defendant is convicted." (§ 1202.4, subd. (b)(2).) Instead of applying the suggested formula, which would have resulted in a $900 fine, the court imposed a lower fine—the lowest permitted by statute. Based on the circumstances of the crime and because the restitution fine imposed, even factoring in the additional fees, was well within the trial court's statutory discretion, we do not find any basis for it to have constituted an excessive fine in violation of the Eighth Amendment.

## **DISPOSITION**

The judgment is modified to reflect the sentence on count 2 is stayed pursuant to section 654. The trial court is directed to cause to be prepared an amended abstract of judgment reflecting this modification and to forward a certified copy of the amended abstract of judgment to the appropriate authorities. As so modified, the judgment is affirmed.


                              DE SANTOS, J.

WE CONCUR:


PEÑA, ACTING P. J.


SMITH, J.

10.